788 F.2d 94
 54 USLW 2567, Fed. Sec. L. Rep. P 92,550,
RICO Bus.Disp.Guide 6245
 Eugene McMAHON, Julia McMahon, individually and as Trustees
of the David J. Hodder & Son, Inc. Employee Pension Plan;
the David J. Hodder & Son Inc. Profit Sharing Plan; the
Laurie Funeral Home, Inc. Employee Pension Plan; the Laurie
Funeral Home Profit Sharing Plan,
Plaintiffs-Appellants-Cross-Appellees,
v.
SHEARSON/AMERICAN EXPRESS, INC., and Mary Ann McNulty,
Defendants-Appellees- Cross-Appellants.
 Nos. 806, 894, Dockets 85-7844, 85-7846.
 United States Court of Appeals,
Second Circuit.
 Argued March 3, 1986.
Decided April 16, 1986.
 
 Theodore G. Eppenstein, New York City (Madelaine Eppenstein, and Eppenstein & Eppenstein, New York City, on the brief), for plaintiffs-appellants-cross-appellees.
 Theodore A. Krebsbach, New York City (Harry D. Frisch and Shearson Lehman Brothers Inc., New York City, on the brief), for defendants-appellees-cross-appellants.
 William J. Fitzpatrick and Gerard J. Quinn, New York City, submitted a brief for the Securities Industry Ass'n, Inc., amicus curiae.
 Before FEINBERG, Chief Judge, and TIMBERS and NEWMAN, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 Eugene McMahon and Julia A. McMahon ("appellants"), individually and as trustees for various pension and profit-sharing plans, appeal from that part of an order entered September 25, 1985 in the Southern District of New York, Lloyd F. MacMahon, District Judge, 618 F.Supp. 384, which required appellants to arbitrate their claims against Shearson/American Express, Inc. and its registered representative, Mary Ann McNulty, ("Shearson") for alleged violations of the Securities Exchange Act of 1934 ("1934 Act") and state law claims of fraud and breach of fiduciary duties. Shearson appeals from that part of the order holding not arbitrable appellants' claim under the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. Sec. 1962(c) (1982) ("RICO"). The district court stayed litigation of the RICO claim pending arbitration of the securities law and state law claims.
 
 
 2
 For the reasons set forth more fully below, under the settled law of this Circuit we hold that the district court erred in holding arbitrable appellants' claims under Sec. 10(b) of the Securities Exchange Act, 15 U.S.C. Sec. 78j(b) (1982), and Rule 10b-5, 17 C.F.R. Sec. 240.10b-5 (1985). The district court, however, was correct in holding the RICO claim to be non-arbitrable. Applying the decision of the Supreme Court in Dean Witter Reynolds, Inc. v. Byrd, 105 S.Ct. 1238 (1985), we hold that arbitration of the pendent state law claims is required, even though bifurcated proceedings may result.
 
 
 3
 In short, we affirm in part, and reverse and remand in part.
 
 I.
 
 4
 The facts and prior proceedings are simple and straightforward.
 
 
 5
 Appellants, individually and as trustees for various pension and profit-sharing plans, commenced this action against Shearson, a brokerage firm, and its registered representative who handled appellants' accounts. Appellants alleged that the registered representative of Shearson, with its knowledge, had violated Sec. 10(b) of the 1934 Act and Rule 10b-5 by churning appellants' accounts, making false statements and omitting material facts from the advice given appellants. Appellants also alleged a RICO claim and state law claims for fraud and breach of fiduciary duties.
 
 
 6
 On June 15, 1982 Julia McMahon entered into a customer agreement with Shearson which contained an arbitration clause providing in relevant part as follows:
 
 
 7
 "Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules, then in effect, of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange, Inc. as I may elect."
 
 
 8
 Relying on this clause, Shearson moved, pursuant to Sec. 3 of the United States Arbitration Act, 9 U.S.C. Sec. 3 (1982), to compel arbitration of all of appellants' claims. In the alternative, Shearson moved to dismiss the complaint for failure to state a claim upon which relief could be granted and on other grounds, none of which is relevant in view of the district court's disposition of the motion to compel arbitration.
 
 
 9
 The district court rejected appellants' assertions that the customer agreement containing the arbitration clause is a contract of adhesion, that fraud is not an arbitrable issue, and that Shearson had waived its right to arbitrate. The court ordered arbitration of the Sec. 10(b) and Rule 10b-5 claims, reasoning that recent Supreme Court decisions cast doubt on holding claims under the 1934 Act to be not arbitrable. In view of the important federal policies inherent in the enforcement of RICO by the federal courts, however, the court stayed litigation of that claim pending arbitration. The court ordered arbitration of the state law claims.
 
 
 10
 We shall examine first the district court's decision that the claims under Sec. 10(b) and Rule 10b-5 are arbitrable. We shall then address the arbitrability of the RICO claim and state law claims.
 
 II.
 
 11
 We turn first to the district court's disposition of appellants' 1934 Act claims.
 
 
 12
 We hold that the district court's decision that appellants' claims under Sec. 10(b) and Rule 10b-5 are arbitrable is an unwarranted departure from the settled law of this Circuit and must be reversed.
 
 
 13
 In Wilko v. Swan, 346 U.S. 427 (1953), the Supreme Court held that, despite the United States Arbitration Act, 9 U.S.C. Sec. 1 et seq., claims arising under Sec. 12(2) of the Securities Act of 1933 ("1933 Act") are not arbitrable. In reaching this result, the Court pointed out that an agreement to arbitrate claims is void under Sec. 14 of the 1933 Act as a stipulation binding the securities customer to waive compliance with a provision of the Act.[1] The provision referred to is the aggrieved party's right to select the judicial forum under Sec. 22(a) of the 1933 Act.
 
 
 14
 As our late colleague, Judge Friendly, noted in Colonial Realty v. Bache & Co., 358 F.2d 178, 183 n. 5 (2 Cir.), cert. denied, 385 U.S. 817 (1966), the non-waiver provision of Sec. 14 of the 1933 Act has an almost identical counterpart in Sec. 29(a) of the 1934 Act.[2] In view of Wilko and the similarity of the non-waiver provisions of the 1933 and 1934 Acts, we consistently have held that Sec. 10(b) and Rule 10b-5 claims are not arbitrable.[3] In Greater Continental Corp. v. Schechter, 422 F.2d 1100, 1103 (2 Cir.1970), we observed that alleged violations of Rule 10b-5 were "properly litigated in the courts where a complete record is kept of the proceedings and findings and conclusions are made." We also pointed out the similarity between Sec. 14 of the 1933 Act and Sec. 29(a) of the 1934 Act. Id. In Allegaert v. Perot, 548 F.2d 432, 436-38 (2 Cir.), cert. denied, 432 U.S. 910 (1977), we reiterated the view that claims under Sec. 10(b) of the 1934 Act are not arbitrable, noting that the broad policy questions involved in securities law claims require a judicial forum for resolution of disputes. Again in AFP Imaging Corp. v. Ross, 780 F.2d 202, 205 (2 Cir.1985), we held that, in an action which alleged violations of Sec. 10(b) and Rule 10b-5, an arbitration clause in the contract was "unenforceable under the law of this Circuit".
 
 
 15
 Despite the settled law of this Circuit that claims under Sec. 10(b) and Rule 10b-5 of the 1934 Act are not arbitrable, Shearson, speculating as to what the Supreme Court may do with our settled law, invites us to overrule our own precedents. We decline the invitation.
 
 
 16
 The district court, in addition to emphasizing the strong national policy favoring arbitration, focused on the Supreme Court's decisions in Dean Witter Reynolds, Inc. v. Byrd, 105 S.Ct. 1238 (1985), and Scherk v. Alberto-Culver Co., 417 U.S. 506 (1974). In Byrd, since the securities broker had sought to compel arbitration of only pendent state claims--not claims arising under the 1934 Act--the Court declined to reach the issue of whether Sec. 10(b) and Rule 10b-5 claims are arbitrable. 105 S.Ct. at 1240 n. 1. Nevertheless, various courts, in holding that Sec. 10(b) and Rule 10b-5 claims are arbitrable, have sought refuge in Justice White's concurring opinion in Byrd, 105 S.Ct. at 1244. Justice White stated that Wilko's reasoning cannot be "mechanically transplanted" to the 1934 Act. Id. While acknowledging the similarity between Sec. 14 of the 1933 Act and Sec. 29(a) of the 1934 Act, Justice White reasoned that the narrower jurisdiction under the 1934 Act and the implied, rather than express, causes of action under Sec. 10(b) and Rule 10b-5 distinguished claims under the 1934 Act from those arising under the 1933 Act. Id. Both the Byrd majority and Justice White's concurring opinion acknowledged that Scherk v. Alberto-Culver Co., supra, 417 U.S. at 513-15, cast some doubt on the applicability of Wilko to claims under Sec. 10(b) or Rule 10b-5. 105 S.Ct. at 1240 n. 1; 105 S.Ct. at 1244.[4] The Supreme Court in Byrd, however, referred to the Scherk decision as follows:
 
 
 17
 "The [Scherk] Court did not, however, hold that Wilko would not apply in the context of a Sec. 10(b) or Rule 10b-5 claim, and Wilko has retained considerable vitality in the lower federal courts. Indeed, numerous District Courts and Courts of Appeals have held that the Wilko analysis applies to claims arising under Sec. 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), and that agreements to arbitrate such claims are therefore unenforceable."
 
 
 18
 105 S.Ct. at 1240 n. 1. (Citations omitted, being among those included in note 3, supra).
 
 
 19
 In the instant case, the district court focused on the allegations of churning and misrepresentation centered on particular securities accounts and held inapplicable the broad policy concerns which this Circuit has recognized in holding 1934 Act claims not arbitrable. While a churning claim by its nature is limited to the specific accounts in question, such claims also reflect the public interest and are important in their deterrent effect. The securities laws generally, and the implied causes of action which the courts have recognized, are designed to protect the public, and particularly the less sophisticated investor. Moreover, this Circuit has not recognized an exception to the non-arbitrability of securities law claims in circumstances other than disputes between member firms of the stock exchanges. E.g., Coenen v. R.W. Pressprich & Co., 453 F.2d 1209 (2 Cir.), cert. denied, 406 U.S. 949 (1972); Axelrod & Co. v. Kordich, Victor & Neufeld, 451 F.2d 838 (2 Cir.1971). We see no justification for carving out an exception to our non-arbitrability precedents for individual claims of churning and misrepresentation.
 
 
 20
 In short, the similarity of the non-waiver provisions, Sec. 14 of the 1933 Act and Sec. 29(a) of the 1934 Act, as well as the strong public policy concerns inherent in the securities laws and the legislative history that preceded their enactment, support the compelling need for a judicial forum in the resolution of securities law disputes. Although Scherk and Byrd may cast some doubt on whether the Supreme Court, if presented with the issue, would hold claims under Sec. 10(b) and Rule 10b-5 to be non-arbitrable, it would be improvident for us to disregard clear judicial precedent in this Circuit based on mere speculation. We think that the orderly administration of justice will be best served if we as one of the inferior courts follow Supreme Court precedent and adhere to the settled law of this Circuit, and a fortiori the district courts should do likewise.
 
 III.
 
 21
 We turn next to the district court's disposition of appellants' RICO claim.
 
 
 22
 Pointing to the important federal policies inherent in the enforcement of RICO by the federal courts, the district court stayed litigation of the RICO claim pending arbitration of the state law claims and the securities law claims. The RICO claim was thus placed on the suspense docket pending the outcome of arbitration of the other claims.
 
 
 23
 In other contexts, we have recognized the inappropriateness of the United States Arbitration Act when strong public policy considerations are involved. In American Safety Equipment v. J.P. Maguire, 391 F.2d 821 (2 Cir.1968), we stated that "[a] claim under the antitrust laws is not merely a private matter. The Sherman Act is designed to promote the national interest in a competitive economy; thus, the plaintiff asserting his rights under the Act has been likened to a private attorney-general who protects the public's interest." 391 F.2d at 826. We hold that there are comparable concerns inherent in the enforcement of RICO claims.
 
 
 24
 The Supreme Court has recognized that arbitration is appropriate in international antitrust disputes because of concerns for international comity, respect for the capacities of foreign and transnational tribunals, and the need for predictability in the international commercial system. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 105 S.Ct. 3346 (1985). The reasoning of our decision in American Safety, however, was not disputed in Mitsubishi, "as applied to agreements to arbitrate arising from domestic transactions." 105 S.Ct. at 3355. Enforcement of the RICO statute is particularly appropriate in a judicial forum because of strong policy concerns, the need for development of the record, and judicial clarification and resulting consistency in resolving disputes under this relatively new statute.
 
 
 25
 The district court had placed the RICO claim on the suspense docket because the arbitrable claims "permeate the case, and the validity of the RICO claim is uncertain at this stage of the litigation." 618 F.Supp. at 389. Since we have held that the securities law claims are not arbitrable, it is now appropriate that the securities law and RICO claims be litigated together since they arise out of the same transaction.[5]
 
 IV.
 
 26
 Finally, this brings us to the district court's disposition of appellants' pendent state law claims.
 
 
 27
 In addition to the claims that Shearson had violated Sec. 10(b), Rule 10b-5, and RICO, appellants' amended complaint alleged state law claims for common law fraud and breach of fiduciary duties. The district court granted Shearson's motion to compel arbitration of these pendent state law claims as well as the securities law claims.
 
 
 28
 Under the Supreme Court's decision in Dean Witter Reynolds, Inc. v. Byrd, supra, these state law claims must be sent to arbitration where there is an enforceable arbitration clause and where a party's motion to compel arbitration encompasses the state law claims, as here.[6] See also AFP Imaging Corp. v. Ross, supra, 780 F.2d at 205. The Court's language in Byrd is unequivocal.
 
 
 29
 "[T]he Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."
 
 
 30
 105 S.Ct. at 1241. The Court also recognized that such bifurcated proceedings could result where securities or antitrust violations are alleged. 105 S.Ct. at 1241 n. 5. We hold that the district court correctly held that the pendent state claims were arbitrable. Despite the potential inefficiency of bifurcated proceedings, we are obliged under Byrd to affirm that part of the district court's order compelling arbitration of the pendent state law claims.[7]
 
 V.
 To summarize:
 
 31
 We hold that the district court erred in departing from this Circuit's precedents in granting Shearson's motion to compel arbitration of the claims alleging a violation of Sec. 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. The district court properly denied the motion to compel arbitration of the RICO claim because of the inherent public interest underlying that cause of action and the need for examining and resolving such disputes in the federal courts. The district court properly compelled arbitration of the pendent state law claims.[8]
 
 
 32
 Affirmed in part; reversed and remanded in part.
 
 
 
 [1]
 Section 14 of the Securities Exchange Act of 1933, 15 U.S.C. Sec. 77n (1982), provides:
 "Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void."
 
 
 [2]
 Section 29(a) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78cc(a) (1982), provides:
 "Any condition, stipulation or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void."
 
 
 [3]
 Following Wilko, several other courts of appeals likewise have held that claims arising under the 1934 Act are not arbitrable. E.g., De Lancie v. Birr, Wilson & Co., 648 F.2d 1255, 1258-59 (9 Cir.1981); Mansbach v. Prescott, Ball & Turben, 598 F.2d 1017, 1039 (6 Cir.1979); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore, 590 F.2d 823, 827-29 (10 Cir.1978); Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 558 F.2d 831, 833-35 (7 Cir.1977); Sibley v. Tandy Corp., 543 F.2d 540, 543 (5 Cir.1976), cert. denied, 434 U.S. 824 (1977); Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 538 F.2d 532, 536 (3 Cir.), cert. denied, 429 U.S. 1010 (1976)
 
 
 [4]
 Indeed, some courts within this Circuit have interpreted dicta in Scherk and Byrd as authority for holding such claims to be arbitrable. E.g., Intre Sport Ltd. v. Kidder, Peabody & Co., 625 F.Supp. 1303 (S.D.N.Y.1985); Finkle & Ross v. A.G. Becker Paribas, Inc., 622 F.Supp. 1505 (S.D.N.Y.1985); Jarvis v. Dean Witter Reynolds, Inc., 614 F.Supp. 1146 (D.Vt.1985); Brener v. Becker Paribas, Inc., 84 Civ. 5872 (S.D.N.Y. Dec. 31, 1985); Ilan v. Shearson/American Express, Inc., 83 Civ. 9319 (S.D.N.Y. Dec. 23, 1985); Johnson v. Kidder, Peabody & Co., 85 Civ. 178 (N.D.N.Y. July 30, 1985)
 Other courts have continued to follow the settled law of this Circuit, holding claims under Sec. 10(b) and Rule 10b-5 not arbitrable. E.g., Leone v. Advest, Inc., 624 F.Supp. 297 (S.D.N.Y.1985); Weizman v. Adornato, 84 Civ. 3603 (E.D.N.Y. April 25, 1985).
 
 
 [5]
 Appellants suggest that the district court's denial of arbitration of the RICO claim was not an appealable interlocutory order under 28 U.S.C. Sec. 1292(a) (1982). We disagree. See Ettelson v. Metropolitan Life Insurance Co., 317 U.S. 188, 191 (1942); Enelow v. New York Life Insurance Co., 293 U.S. 379, 383 (1935); Poriss v. Aacon Auto Transport, Inc., 685 F.2d 56, 59-60 (2 Cir.1982)
 
 
 [6]
 Appellants challenge the arbitrability of their claims against Shearson on numerous grounds. In view of our rulings on the securities and RICO claims, these arguments are not relevant to the litigation of the disputes under federal law but they do require brief examination since, generally, state law claims for fraud and breach of fiduciary duties are arbitrable if there is a valid arbitration clause. In the instant case, the district court found that the elements for compelling arbitration were present, i.e., an agreement to arbitrate, arbitrable claims, and the absence of a waiver. We find no reason to disturb the district court's threshold determination that an enforceable arbitration clause was in effect. While we hold the federal claims here are not within the scope of the arbitration clause, we also hold that the court correctly compelled arbitration of the state law claims for fraud and breach of fiduciary duties
 
 
 [7]
 Of course, if appellants, upon remand of this case to the district court, should withdraw their pendent state law claims, that would result in no claims left to be arbitrated. All remaining claims would be litigated in the federal court. And bifurcated proceedings would be avoided. See AFP Imaging Corp. v. Ross, supra, 780 F.2d at 205
 
 
 [8]
 Though the applicability of Wilko v. Swan, supra, to issues arising under Sec. 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 is settled in this Circuit, it would nonetheless have been helpful if the Securities and Exchange Commission had volunteered an amicus brief to inform us of its views. Without any request, the Commission rendered substantial help with respect to corresponding questions under the Securities Act of 1933 in Wilko v. Swan, supra--both in this Court, 201 F.2d at 440, 441-42, 445, and in the Supreme Court, 346 U.S. at 427, 428, 440