**Domenick FARINO and Frances Farino, Plaintiffs,**

v.

**ADVEST, INC., and Charles Lesser, Defendants.**

**No. 85 CIV 4589.**

United States District Court, E.D. New York.

May 1, 1986.

See also, 111 F.R.D. 345.

John Walshe, New York City, for plaintiffs.

Kramer, Coleman & Rhine, New York City, R. Jeffrey More, of counsel, for defendants.

## MEMORANDUM–DECISION and ORDER

BARTELS, Senior District Judge.

In what is essentially a 'stock-churning' action, plaintiffs Domenick and Frances Farino charge defendants Advest, Inc., and Charles Lesser with (1) violations of §§ 10(b) and 20 of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. §§ 78j(b) and 78t, and Rule 10b–5 promulgated thereunder; (2) state common law fraud and breach of fiduciary duty; and (3) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1964(c).

Plaintiffs, who have a joint margin trading account with defendant brokerage firm Advest, allege that for a period of 19 months between June 1983 and December 1984, defendant Lesser, the account executive, engaged in aggressive, frequent, unauthorized trading in plaintiffs' account, contrary to plaintiffs' express instructions to limit trading to conservative, dividend-producing stocks. As a result, plaintiffs

allege, defendants generated excessive commissions and margin charges, and reduced plaintiffs' equity from approximately $500,000 to less than $90,000 in December 1984, and less than $30,000 in December 1985.

In lieu of answer, defendants have moved, under the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4, to stay this action and compel plaintiffs to arbitrate the federal and state law claims in their complaint. The motion is based on a broad arbitration clause contained in a Customer's Agreement dated December 21, 1977. Plaintiffs, however, deny signing this agreement containing the arbitration clause, and question whether it applies to the particular account being sued upon here since the Agreement contains a different account number. In the alternative, should the Court determine the arbitration agreement is enforceable, plaintiffs oppose arbitration of their federal law claims on the ground that such claims are not subject to mandatory arbitration under the Arbitration Act.

Defendants' motion thus raises two issues; first, whether there is an enforceable agreement to arbitrate, and second, whether any or all of the claims alleged are arbitrable.

*Arbitration Agreement*

Plaintiffs deny signing the 1977 Customer's Agreement containing the arbitration clause. They also note that the account number which is hand written at the top of the disputed Customer's Agreement, 38–076121, is not the number of the particular account being sued upon in this action, 36–403806. Therefore, plaintiffs question whether the Agreement applies at all in this case, even if the signatures are deemed valid.

In view of these factual disputes over the validity of the 1977 Agreement, the Court permitted discovery relevant to this issue and held an evidentiary hearing on April 11 and 18, 1986, pursuant to § 4 of the Federal Arbitration Act, 9 U.S.C. § 4. Based on all the evidence submitted by the parties, the Court makes the following findings.

For some time before 1973, plaintiff Domenick Farino and his wife Frances had individual securities accounts with Purcell Graham, a brokerage firm, for which defendant Charles Lesser was the account executive. In 1973, the Purcell Graham branch office in which plaintiffs had their accounts was taken over by defendant Advest, Inc. At that time, plaintiffs executed new Customer's Agreements, similar to the 1977 Agreement in dispute here, with Advest, and Lesser, now an Advest employee, continued as the account executive.

In December 1977, plaintiffs requested Advest to open for them the joint margin account which is the subject of this lawsuit. Lesser told plaintiffs, in December 1977, that they must sign a customer's authorization in order to open the account, as required by relevant regulations, and he thereafter drew up an authorization which plaintiffs signed and returned to Advest. According to Lesser, had the plaintiffs not returned such an authorization to Advest, Advest's Compliance Department, which oversees the company's compliance with relevant securities laws and regulations, would have notified him that the authorization was missing. Miles Levites, Advest's Director of Compliance, confirmed that Stock Exchange rules, and Advest's standard practice, require that Advest obtain a customer's authorization in order to engage in margin trading on the customer's account.

Defendants produced a copy of a document entitled "Customer's Agreement", reproduced from microfilm, since it is Advest's practice to reduce all such documents to microfilm and then to destroy the originals. The Customer's Agreement, dated December 21, 1977, contains the authorization to engage in margin trading, the disputed arbitration clause, and plaintiffs' purported signatures. Plaintiffs claim they did not sign this document, and plaintiffs' attorney suggested, in the course of the hearing, that plaintiffs' signatures may have been fraudulently transferred onto the Customer's Agreement from some other document.

However, in addition to evidence showing that this document was produced in the normal course of Advest's business, defendants presented the testimony of Lyndal L. Shaneyfelt, a handwriting expert and also an expert in examining questioned documents, whose experience includes 35 years of training and work with the FBI as well as 10 years of work as a private consultant in this field. In the course of his work, Shaneyfelt has frequently been called upon to determine the validity of signatures, often in cases where the only copy of the questioned document is on microfilm.

Using a chart entered into evidence, Shaneyfelt made a detailed comparison on the record of the contested signatures with exemplars of plaintiffs' signatures made at various times from 1977 to the present. Based on his experience and analysis of the signatures, it was his opinion that the "Domenick Farino" signature on the 1977 Agreement was indeed that of the plaintiff Domenick Farino, and that Domenick had probably also signed his wife's name to the Agreement. Both plaintiffs admitted on the stand that Domenick had his wife's authority to sign documents in connection with their joint account with Advest.

In addition, the Court examined on its own the following: signatures taken from the 1973 Customer's Agreement, a letter from plaintiffs to Advest dated December 15, 1977, requesting transfer of Domenick's individual account into the joint account, other letters to Advest dated January 20, 1983, December 26, 1985, and January 22, 1986, and an exemplar of Frances Farino's signature made in court on April 11, 1986. Based on its own examination, the Court agrees with defendants' expert that the signatures on the 1977 Agreement were made by the plaintiff Domenick Farino. In fact, Domenick himself testified, on cross examination, that he was unable to see anything in the signature on the 1977 Agreement indicating that it was not his own. Finally, Shaneyfelt, and the Court, saw no evidence of tracing nor of an attempt to transfer by other means plaintiffs' signatures from another document.

Plaintiffs, on the other hand, failed to produce any significant evidence, other than their own self-serving statements, that the signatures were fraudulently placed on the 1977 Agreement or that the Agreement had not been produced in the normal course of Advest's business practices. In view of the paucity of plaintiffs' evidence, and the strength of defendants' evidence outlined above, the Court finds that plaintiffs signed the 1977 Customer's Agreement binding them to arbitrate "any controversy ... arising out of or relating to this contract or the breach thereof."

Plaintiffs also raise the issue of the different account number found on the Customer's Agreement, which is more easily disposed of. Defendants presented uncontested testimony and evidence adequately demonstrating that in 1983, defendant Lesser moved from his position as Branch Manager of the former Purcell Graham Forest Hills branch taken over by Advest, to become Branch Manager of Advest's Woodbury office, taking with him some 250 accounts, including plaintiffs' account. In keeping with Advest's standard practice, new account numbers were assigned to all the transferred accounts to indicate, for the purpose of record keeping at Advest's Hartford, Connecticut headquarters, that these accounts were now located at the Woodbury branch. Such transfer of accounts from one branch to another does not require the customer to open a new account or execute any new documents. Defendants produced a computer listing showing that the account number found on the 1977 Customer's Agreement and the account number of the account now being sued upon, belong to the same account. Accordingly, the Court finds that the 1977 Customer's Agreement, and the arbitration clause found therein, does pertain to the account at issue in this case.

Plaintiffs' claims concerning the account number and the signatures appearing on the 1977 Agreement appear so overwhelmingly frivolous from the evidence that their

frivolousness must also have been clear to plaintiffs and their counsel.

*Enforceability*

■ We turn next to the issue of whether any of the plaintiffs' claims are arbitrable. Plaintiffs assert that the agreement to arbitrate their claims under the 1934 Act and RICO is not enforceable under the Supreme Court's landmark decision in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), holding that an agreement to arbitrate a claim under § 12(2) of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 771(2), is not enforceable. *See Greater Continental Corp. v. Schechter*, 422 F.2d 1100, 1103 (2d Cir.1970) (1934 Act claims not arbitrable under *Wilko* ); *S.A. Mineracao de Trinadade-Samitri v. Utah International*, 576 F.Supp. 566 (S.D.N.Y. 1983) (RICO claims not arbitrable under *Wilko* ).

As indicated in the Supreme Court's recent decision in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), a number of district courts and courts of appeal have held that *Wilko* analysis applies to claims arising out of § 10(b) of the Securities Act of 1934, and that the agreements to arbitrate such claims are unenforceable. *Id.* at 1240 n. 1. The Supreme Court, however, while noting its earlier expression of doubt on the issue in *Scherk v. Alberto-Culver*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), declined to resolve the applicability of *Wilko* to claims under § 10(b) or Rule 10b–5. On the other hand, Justice White, in his concurring opinion, stated that it "is a matter of substantial doubt" that *Wilko* prevents arbitration of 1934 Act Claims. *Id.* 105 S.Ct. at 1244.*

However, despite the "substantial doubt" raised by Justice White, a recent decision

of this Circuit in *McMahon v. Shearson/American Express*, 788 F.2d 94 (2d Cir.1986), removed that doubt as far as this Circuit is concerned. In *McMahon*, the Court definitely held that claims arising out of § 10(b) and 10b–5 of the 1934 Act are not arbitrable according to the settled law of the Circuit, stating that despite *Scherk* and *Byrd*, it would be improvident for the court to "disregard clear judicial precedent in this Circuit based on mere speculation." *Id.* at 788 F.2d 98, 99. It based its decision upon the similarity of the non-waiver provisions in § 14 of the 1933 Act and § 29(a) of the 1934 Act, saying that the public policy and legislative history of the 1934 Act "support the compelling need for a judicial forum in the resolution of securities law disputes." *Id.*

The Court went on to hold that plaintiffs' RICO claims also were non-arbitrable, stating that "[e]nforcement of the RICO statute is particularly appropriate in a judicial forum because of strong policy concerns, the need for development of the record, the judicial clarification and resulting consistency in resolving disputes under this relatively new statute." *Id.* 788 F.2d at 98–99. In light of *McMahon*, this Court must conclude that the arbitration clause in the 1977 Agreement is not enforceable with regard to plaintiffs' 1934 Act and RICO claims.

■ Nevertheless, as noted in *McMahon*, plaintiffs' "state law claims must be sent to arbitration", under the Supreme Court's decision in *Byrd*, "where there is an enforceable arbitration clause" encompassing those claims, even though this may result in potentially inefficient bifurcation of proceedings. *Id.* 788 F.2d at 99. Plaintiffs here have not disputed that their state law claims are subject to arbitration.

* Following Justice White's concurrence in *Byrd,* there have been a number of district court decisions holding 1934 Act claims to be arbitrable. *See, e.g., Brener v. Becker Paribas,* 628 F.Supp. 442 (S.D.N.Y.1986) and cases cited therein. There has been a similar trend in recent cases, following *Byrd* and the Supreme Court's decision in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) allowing arbitration of antitrust claims, favoring arbitration of RICO claims, particularly in this type of 'stock-churning' action. *See Brener v. Becker Paribas, supra; Bale v. Dean Witter Reynolds, Inc.,* 627 F.Supp. 650 (D.Minn.1986); *Development Bank of Philippines v. Chemtex Fibers, Inc.,* 617 F.Supp. 55 (S.D.N.Y.1985).

Accordingly, defendants' motion to compel arbitration is granted with respect to plaintiffs' state law claims for fraud and breach of fiduciary duty, and is denied with respect to plaintiffs' 1934 Act and RICO claims. Further proceedings in this Court on plaintiffs' federal law claims are stayed pending outcome of arbitration. 9 U.S.C. § 3; *see Dean Witter Reynolds, Inc. v. Byrd*, 105 S.Ct. at 1242–1244.

SO ORDERED.