Domenick and Frances
**FARINO, Plaintiffs,**

v.

**ADVEST, INC. and Charles
Lesser, Defendants.**

No. 85 CIV 4589.

United States District Court,
E.D. New York.

June 11, 1986.

**346**

John Walshe, New York City, for plaintiffs.

Kramer, Coleman & Rhine, New York City, for defendants; R. Jeffrey More, of counsel.

## MEMORANDUM–DECISION and ORDER

BARTELS, District Judge.

This is another case involving sanctions. Defendants Advest, Inc. and Charles Lesser move for attorneys' fees and costs against plaintiffs Domenick and Frances Farino and their attorney, John Walsh, Esq., pursuant to Rule 11 of the Federal Rules of Civil Procedure, Section 1927 of Title 28 of the United States Code, and the equitable powers of the Court, asserting that plaintiffs raised frivolous issues of fact, discussed below, in opposition to defendants' motion to compel arbitration of plaintiffs' claims. Following submission of defendants' motion for sanctions, plaintiffs cross-moved for an award of fees to themselves on the ground that defendants "misstated law" in support of their motion to compel arbitration. Although plaintiffs' cross-motion was served less than two days before the return date of defendants' motion for sanctions, and consequently without an opportunity for defendants to respond, the Court finds plaintiffs' cross-motion to be sufficiently without merit to dispose of it presently.

### Background

Plaintiffs Domenick and Frances Farino filed this alleged "stock-churning" action charging defendant Advest, a stock brokerage firm with which they had a joint margin trading account, and Charles Lesser, the account executive in charge of their account, with violations of federal securities laws, the Racketeer Influenced and Corrupt Organizations Act (RICO), and state common law fraud and breach of fiduciary duty. Defendants responded with a motion, under the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4, to compel arbitration of all plaintiffs' claims based upon an arbitration agreement contained in a Customer's Agreement dated December 21, 1977 ("1977 Agreement"), which contained plaintiffs' signatures. In opposition to this motion, plaintiffs asserted (1) that they never signed the 1977 Agreement, and (2) that the 1977 Agreement did not pertain to the particular account in issue because it contained a different account number. Plaintiffs also asserted that under the relevant case law, their federal law claims were not subject to arbitration.

In view of the factual disputes raised by plaintiffs concerning the validity of the 1977 Agreement, the Court adjourned the motion for approximately one month in order to allow discovery limited to these issues. An evidentiary hearing was held on April 11 and 18, 1986, at which the defendants presented testimony from defendant Charles Lesser, Miles Levitas, Advest's Director of Compliance, and an expert in handwriting and examination of questioned documents. Plaintiffs presented only the testimony of Domenick and Frances Farino who continued to deny having signed the 1977 Agreement.

Based on the evidence received at the hearing, the Court found that the signature of Domenick Farino on the 1977 Agreement was clearly made by Domenick Farino, the signature of Frances Farino was clearly made by Domenick with his wife's permission, and that the plaintiffs had failed to produce any evidence, apart from their own statements, that the Agreement had not been produced in the normal course of Advest's business or was otherwise fraudulent. The Court further found that the differing account numbers were due to a transfer of the account from one Advest branch office to another, which did not necessitate opening a new account, and that therefore the two numbers in fact clearly belonged to the same account. No ambiguities existed and defendants' evidence on this issue was uncontested by plaintiffs at the hearing. The Court completed its factual findings by noting that "Plaintiffs' claims concerning the account numbers and the signatures appearing on the 1977 Agreement appear so overwhelmingly frivolous from the evidence that their frivolousness must also have been clear to plaintiffs and their counsel."

Having found a valid agreement to arbitrate, the Court then determined that nevertheless, plaintiffs' federal law claims were not subject to arbitration in view of the Second Circuit's recent decision in *McMahon v. Shearson/American Express*, 788 F.2d 94 (2d Cir.1986), which effectively halted, in this Circuit at least, a recent trend in district court decisions holding such claims to be arbitrable. *See Brener v. Becker Paribas*, 628 F.Supp. 442 (S.D.N.Y. 1986), and cases cited therein. However, under *McMahon*, plaintiffs' state law claims clearly were subject to arbitration and accordingly, the Court granted defendants' motion to compel arbitration of those claims and stayed furthered proceedings in this action pending outcome of the arbitration.

Defendants now bring this motion asserting that plaintiffs' insistence on pursuing the above factual claims through discovery and through a hearing was vexatious, frivolous and not done in good faith. In support, defendants argue that, in addition to plaintiffs' failure to produce any substantial evidence to support their claims at the hearing, defendants provided them ample evidence during discovery to indicate that the claims were without adequate factual basis and should have been dropped. For example, as early as February 27, 1986, defendants explained to plaintiffs' attorney that the differing account numbers represented the same account and were due merely to a transfer of the account. Defendants again offered the explanation in a letter dated March 5, and in a letter dated April 4, 1986, wherein they offered to make available to plaintiffs Advest's Chief of Operations to explain the differing account numbers, which plaintiffs' attorney refused. Despite these explanations and plaintiffs' complete failure to find evidence to the contrary, plaintiffs insisted on pursuing the claim, forcing defendants to produce at the hearing an officer of the corporation from Connecticut and documents which plainly substantiated defendants' explanation for the differing account numbers. It should be noted that plaintiffs had no other joint trading account to which the differing number could apply.

Furthermore, defendants assert that plaintiffs needlessly delayed and obstructed discovery on these issues. For example, plaintiffs delayed providing defendants with authenticated exemplars of plaintiffs' signatures until shortly before the evidentiary hearing, and their attorney adjourned defendants' deposition of the plaintiffs several times, demanding that defendants produced discovery which the Court held was irrelevant to the arbitration motion, and later prevented his clients from answering questions during the deposition concerning the authenticity of their signatures on various documents. Although plaintiffs did eventually provide exemplars of Domenick's signature, they failed to provide an authenticated exemplar of Frances Farino's signature until the Court ordered that one be produced during the hearing. In view of the conduct of plaintiffs and their attorney, defendants claim they are entitled to

fees and costs incurred in discovery and the hearing on these claims.

In opposition to defendants' motion for sanctions, and in support of plaintiffs' own motion for sanctions against defendants, plaintiffs' attorney submits an affidavit. This sworn document contains numerous allegations concerning defendants' conduct in settlement discussions with plaintiffs before and after they retained counsel and also with regard to discovery matters all of which are wholly irrelevant to the motion to compel arbitration upon which both sides base their claims for sanctions.

Plaintiffs' counsel also asserts that defendants refused to provide him with an adequate copy of the 1977 Agreement and evidence concerning the two account numbers. As a result, plaintiffs' counsel claims he was unable to assess the validity of plaintiffs' claims and therefore was "forced" by defendants to litigate the issues. However, plaintiffs' counsel admits that he was permitted access to the defendants' microfilm from which all copies of the Agreement were made, and does not deny that defendants explained to him on several occasions the rather simple reason why there existed two different account numbers. Nor were plaintiffs' counsel's hands entirely clean with regard to delays during discovery on this issue, as indicated above. In any case, despite the one month adjournment to permit plaintiffs discovery on their claims, it is obvious that plaintiffs' counsel did not and could not discover evidence to substantiate them. For plaintiffs' counsel to assert in this motion that it was defendants who compelled litigation of these plainly frivolous claims is ludicrous. Although it must have been obvious to plaintiffs' attorney that he could present no evidence at the hearing, he insisted on taking the defendants' and the Courts' time to compel defendants to refute his accusations.

## Discussion

Under Rule 11 of the Federal Rules of Civil Procedure, as amended in 1983, an attorney's or the party's signature on a pleading, motion, or other paper constitutes a certification

> that to the best of his knowledge, information, and belief formed *after reasonable inquiry it is well grounded in fact and is warranted by existing law* ... and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. [Emphasis added].

If an attorney or party signs a paper in violation of the rule, then the Court "shall impose upon the person who signed it, a represented party, or both, an appropriate sanction" including costs and attorneys' fees. As the Second Circuit has recently noted in *Eastway Construction Corp. v. City of New York,* 762 F.2d 243 (2d Cir. 1985), the amended rule sets a more stringent standard which "imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed. Simply put, subjective good faith no longer provides the safe harbor it once did." *Id.* at 253.

■ The Court will consider first plaintiffs' claim for fees against defendants. Plaintiffs assert (1) that in light of the Second Circuit's recent decision in *McMahon v. Shearson/American Express, supra,* defendants' motion, insofar as it sought to compel arbitration of plaintiffs' federal law claims, was unwarranted by existing law and therefore a violation of Rule 11; and (2) that defendants withheld relevant case law, including the *McMahon* decision, from the Court. Both assertions are plainly unfounded. In the first place, defendants' motion was, at that time, clearly supported by substantial recent case law in this Circuit and elsewhere directly on point. *See Brener v. Becker Paribas, supra.* Secondly, it was defendants, and not plaintiffs, who notified the Court of the *McMahon* decision which resolved this issue in plaintiffs' favor and against the defendants, at least in this Circuit. In fact, it was not defendants' but plaintiffs' attorney's submissions which were seriously deficient in presenting the relevant law. While defendants' memorandum in support

provided a thoroughly adequate presentation of the relevant law, plaintiffs' attorney, in the one and a half pages of his memorandum devoted to this issue, cited a single case, *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), while failing altogether to mention the substantial recent case law interpreting that very decision to allow arbitration of plaintiffs' federal law claims. For plaintiffs now to claim sanctions against defendants on these grounds is not only frivolous but unconscionable. Plaintiffs' motion is accordingly denied.

■ The Court next considers defendants' motion for sanctions. The Court concludes that under the circumstances of this case, as outlined above, plaintiffs' attorney has violated Rule 11 insofar as he insisted on pursuing the claim that the 1977 Agreement was inapplicable because it contained a different account number. Despite defendants' explanations and evidence offered to plaintiffs' attorney during discovery, and despite plaintiffs' obvious lack of evidence to the contrary, plaintiffs' nevertheless compelled defendants to defend against this baseless claim at the hearing.

■ With regard to the signature issue, the Court again concludes that, even if the plaintiffs in subjective good faith believed they had not signed the 1977 Agreement, "reasonable inquiry" would have revealed that this claim was not "well grounded in fact." This is indicated by the fact that during discovery defendants were able to assemble substantial evidence that the Agreement was produced in the normal course of business pursuant to plaintiffs' own request that Advest open a joint account for them, and expert testimony that the signatures and the document were genuine. Despite this evidence, and despite the fact that plaintiffs failed to offer expert testimony or any other evidence to the contrary (except plaintiffs' own statements), plaintiffs insisted on compelling defendants to defend against this unsupportable claim as well. Finally, the Court cannot ignore plaintiffs' untimely and equally frivolous cross-motion for attorneys' fees.

From this recitation, "it is patently clear that [plaintiffs' claims had] absolutely no chance of success" and that "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact." *Eastway Construction Corp. v. City of New York,* 762 F.2d at 254. Accordingly, the Court is required to impose an appropriate sanction. *Bartel Dental Books Co. v. Schultz,* 786 F.2d 486, 490 (2d Cir.1986).

In as much as the Court has determined that sanctions are appropriate here under Rule 11, it need not determine whether 28 U.S.C. § 1927 or the Court's general equitable powers also justify an award of fees in this case. The Court does note, however, that plaintiffs' failure to produce any substantial evidence at the hearing, other than the bald assertions they started with, together with plaintiff Domenick's admission on the stand that he saw nothing unusual in his signature on the 1977 Agreement, and plaintiffs' uncooperative attitude during discovery, all strongly suggest the subjective (as well as obviously objective) bad faith and intent to "unreasonably and vexatiously" multiply proceedings which would justify an award of fees on those grounds. *See State of West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079, 1092 (2d Cir.), *cert. denied,* 404 U.S. 871 (1971); *Kamen v. ATT,* 791 F.2d 1006 (2d Cir.1986).

■ While the Court finds that sanctions are warranted against plaintiffs' attorney, it is unclear whether and to what extent plaintiffs themselves participated in their attorneys' decision to pursue the phantom factual issues they raised concerning the validity of the 1977 Agreement. Consequently, the Court will not impose sanctions upon Mr. and Mrs. Farino. On the other hand, the Court has no hesitancy in imposing sanctions upon their attorney in light of the discussion above. Such sanction, as a deterent to the unjustifiable conduct of plaintiffs' attorney herein, will not

chill any creative or innovative instincts in the mind of any attorney.

 Defendants' attorney has submitted an affidavit showing an expenditure of 117.75 hours by defendants' attorney and 16.8 hours by his associate upon these frivolous motions, and, at $120 per hour for defendants' attorney and $60 per hour for his associate, have computed their fees at $15,138.00, and their costs at $3,227.35.

The total of the amounts requested is too large for a deterent and the Court does not intend, with regard to these motions, to completely reimburse the defendants for their actual fees and costs. The motions were simply a preliminary stage of the action and under the circumstances the Court believes that $4,000.00 is a sufficient deterent to such conduct in the future and will comply with Rule 11.

SO ORDERED.