George L. STERNE, Plaintiff-Appellee,

v.

DEAN WITTER REYNOLDS, INC.; Daniel Turov; Sears Roebuck & Company, Inc., Defendants-Appellants.

No. 86–3147.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 2, 1986.

Decided Jan. 6, 1987.

Louis F. Gilligan, Kevin E. Irwin (argued), Keating, Muething, & Klekamp, Cincinnati, Ohio, for defendants-appellants.

Douglas G. Cole, Michelle Fleming (argued), Cincinnati, Ohio, for plaintiff-appellee.

Before KEITH and WELLFORD, Circuit Judges, and PECK, Senior Circuit Judge.

WELLFORD, Circuit Judge.

Sterne (appellee) filed an amended class action complaint in the district court against Daniel Turov, registered representative and senior Vice President of Dean Witter Reynolds, Inc., Dean Witter Reynolds, Inc., (Dean Witter), and Sears Roebuck & Co., Inc. (Sears, which is Dean Witter's parent corporation). Sterne alleged violations of various securities laws, common law fraud, and breach of common law fiduciary duties by reason of his bond dealings with Turov.

Dean Witter filed a motion to dismiss and to compel arbitration, in accordance with a provision in its agreement with Sterne. Dean Witter sought to dismiss all claims which it argued were contractually required to be submitted to arbitration. In response, Sterne filed a motion to amend "to remove from the complaint all claims he believed were arbitrable...." On December 27, 1985, Dean Witter moved to amend its March 25th motion "to request a stay of the district court proceedings in conjunction with the requested order compelling arbitration."

■ The district court granted Dean Witter's motion to amend its motion, but denied the amended motion to dismiss; it refused to compel arbitration. Dean Witter appeals the refusal to compel arbitration. We find that we have jurisdiction to consider this appeal, since interlocutory orders denying motions to compel arbitration are immediately appealable under section 1292(a)(1). *Liskey v. Oppenheimer & Co.*, 717 F.2d 314, 315 (6th Cir.1983).

In October, 1984, Sterne allegedly received an unsolicited call from Turov describing an investment strategy to take advantage of an expected increase in the price of TransWorld bonds by December 3, 1984. Sterne further alleges that Turov represented the investment was completely safe and recommended that the bonds be bought promptly at the best price possible. As a consequence, Sterne bought $100,000 worth of these bonds. He also signed an undated customer agreement upon opening the margin account with Dean Witter. The agreement included a clause in which the parties agreed to arbitrate any subsequent disputes.

Instead of increasing in value, the price of the bonds fell from a high of 91¾ on October 24, to 76 on December 2. During this time, plaintiff alleged that Turov repeatedly reassured him, so Sterne did not sell. By telephone call from Turov, and by letter from Dean Witter, dated December 4, 1984, Sterne claims that Dean Witter notified him for the first time that it unilaterally sold out 75% of his position in TransWorld bonds, producing a claimed loss of 42.5% of his initial investment. Sterne's subsequent class action suit against Dean Witter was on behalf of all persons who had suffered losses after buying TransWorld bonds at the time in question upon Turov's and Dean Witter's advice. Sterne alleges that Dean Witter and Turov misrepresented material facts to him, and that they were also guilty of material omissions with respect to the buying and holding of the bonds.

Dean Witter and the Securities Exchange Association, Inc. (which filed an *amicus curiae* brief in support of Dean Witter's position), argue that this type of claim should be arbitrated in accordance with the agreement of the parties.[1] This argument is supported by *Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 795 F.2d 1393 (8th Cir.1986).

1. The pertinent part of the agreement reads as follows:

Any controversy between you [Dean Witter] and the undersigned [Sterne] arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining,....

Customer's Agreement, ¶ 16.

482

The opposing position taken by Sterne, that section 10(b) claims are not arbitrable, has received the support of an overwhelming number of appellate courts, one of which appears to be binding precedent on this court. *See Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017 (6th Cir.1979); *Jacobson v. Merrill Lynch, Pierce, Fenner & Smith,* 797 F.2d 1197 (3d Cir.1986); *Badart v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 797 F.2d 775 (9th Cir.1986); *King v. Drexel Burnham Lambert, Inc.,* 796 F.2d 59 (5th Cir.1986) (pet. for cert. filed August 25, 1986); *Conover v. Dean Witter Reynolds, Inc.,* 794 F.2d 520 (9th Cir.1986) (pet. for cert. filed August 29, 1986); *Miller v. Drexel Burnham Lambert, Inc.,* 791 F.2d 850 (11th Cir.1986); *McMahon v. Shearson/American Express, Inc.,* 788 F.2d 94 (2d Cir.), *cert. granted,* — U.S. —, 107 S.Ct. 60, 93 L.Ed.2d 20 (1986). Most of the cases supporting Sterne's position rely upon *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), which held that the Arbitration Act does not compel arbitration of section 12(2) claims under the Securities Act of 1933. The cases extended *Wilko* to cover claims arising under the 1934 Act's section 10(b) and Rule 10b–5 claims, such as those involved in the instant case. *Phillips,* alone among the circuit court decisions, refused to extend *Wilko* to cover these claims.

In order for Dean Witter to prevail, we must ignore both *Mansbach* and the rationale of *Wilko,* in addition to finding that the Arbitration Act [2] compels arbitration of Sterne's claims.

In *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), a customer sued his brokerage firm under section 12(2) of the Securities Act of 1933,[3] claiming inducement to buy securities through false representations of the broker, which resulted in a large loss. The broker sought to compel arbitration of the dispute in accordance with a signed predispute arbitration agreement. The Court noted that the Arbitration Act [4] was pertinent; nevertheless, it opted for application of the securities laws.

Two policies, not easily reconcilable, are involved in this case. Congress has afforded participants in transactions subject to its legislative power an opportunity generally to secure prompt, economical and adequate solution of controversies through arbitration if the parties are willing to accept less certainty of legally correct adjustment. On the other hand, it has enacted the Securities Act to protect the rights of investors and has forbidden a waiver of any of those rights. Recognizing the advantages that prior agreements for arbitration may provide

**2.** "A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1970).

**3.** This part of the 1933 Securities Act sets out that any person who

"sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section 77c), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchas-

er not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."
*Wilko,* 346 U.S. at 428 n. 1, 74 S.Ct. at 183 n. 1 (quoting Securities Act of 1933 § 12(2), 15 U.S.C. § 77*l*(2)) (section 77*l* has since been amended slightly).

**4.** Section 3 provides that the district court should stay any action pending arbitration of claims "referable to arbitration under an agreement in writing for such arbitration[.]" *Wilko,* 346 U.S. at 429 n. 3, 74 S.Ct. at 183 n. 3 (quoting the Federal Arbitration Act, 9 U.S.C. § 3).

for the solution of commercial controversies, we decide that the intention of Congress concerning the sale of securities is better carried out by holding invalid such an agreement for arbitration of issues arising under the Act.

*Wilko*, 346 U.S. at 438, 74 S.Ct. at 188 (footnote omitted).

■ *Wilko* weighed the policy favoring arbitration against the policy inherent in the anti-fraud protection of the securities laws involved, and felt that the latter policies were weightier and should prevail. Although there are differences between the 1933 and 1934 Acts, the rationale of *Wilko* persuades us that, despite his agreement to do so, Sterne should not be compelled to arbitrate. *See McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94 (2d Cir.), *cert. granted*, — U.S. —, 107 S.Ct. 60, 93 L.Ed.2d 20 (1986), where the court considered similar policies in light of the 1934 Securities Act:

> In view of *Wilko* and the similarity of the non-waiver provisions of the 1933 and 1934 Acts, we consistently have held that § 10(b) and Rule 10b–5 claims are not arbitrable. In *Greater Continental Corp. v. Schechter*, 422 F.2d 1100, 1103 (2 Cir.1970), we observed that alleged violations of Rule 10b–5 were "properly litigated in the courts where a complete record is kept of the proceedings and findings and conclusions are made." We also pointed out the similarity between § 14 of the 1933 Act and § 29(a) of the 1934 Act. *Id.* In *Allegaert v. Perot*, 548 F.2d 432, 436–38 (2 Cir.), *cert. denied*, 432 U.S. 910 [97 S.Ct. 2959, 53 L.Ed.2d 1084] (1977), we reiterated the view that claims under § 10(b) of the 1934 Act are not arbitrable, noting that the broad policy questions involved in securities law claims require a judicial forum for resolution of disputes.

*McMahon*, 788 F.2d at 96–97 (footnote omitted). We agree with the analysis in *McMahon*.

Finally, we turn to a prior case decided by this court, *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017 (6th Cir.1979).

There, the plaintiff, who was an individual investor like Sterne, sued his stockbroker "alleg[ing] various violations of the federal securities laws and corresponding state law claims". *Id.* at 1019. On the question whether the federal section 10(b) and Rule 10b–5 claims would require arbitration under the agreement of the parties, we stated:

> the teaching of *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), precludes compelling Mansbach to submit the matter to arbitration. The arbitration agreement is overridden by the anti-waiver provisions of the federal securities laws. While *Wilko* arose under only the Securities Act of 1933, its holding and rationale are equally applicable to cases arising under the Securities Exchange Act of 1934.... This case does not come within the narrow exception to *Wilko* for cases concerning international securities transactions established in *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974).

*Id.* at 1030 (citations omitted). We consider Mansbach to be binding precedent. Accordingly, we AFFIRM.