### SIDARMA SOCIETA ITALIANA DI ARMAMENTO SPA, VENICE

v.

**HOLT MARINE INDUSTRIES, INC., Holt Marine System Companies, Waterside Ocean Navigation of Pennsylvania, Thomas Holt, Holt Hauling and Warehousing Systems, Inc., Holt Marine Terminal, Inc., B. H. Sobelman, Inc. and Holt Cargo Systems.**

No. 75 Civ. 6265 (RJW).

United States District Court, S. D. New York.

June 9, 1981.

Poles, Tubin, Patestides & Stratakis, New York City, for plaintiff; John G. Poles, Alan Van Praag, Michael O. Hardison, New York City, of counsel.

Anderson, Russell, Kill & Olick, P. C., New York City, for defendants Holt Hauling & Warehouse Systems, Inc.; Holt Marine Terminal, Inc. and B. H. Sobelman, Inc.; John H. Gross, Nicholas J. Zoogman, Randy Parr, Maria P. Sperando, New York City, of counsel.

Gladstone, Hart & Rathe, Hackensack, N. J., for defendants Waterside Ocean Navigation of Pennsylvania and Thomas Holt; Marvin H. Gladstone, Hackensack, N. J., of counsel.

Zock, Petrie, Reid & Curtin, New York City, for Charles F. Nisi; Philip J. Curtin, New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiff moves pursuant to section 10 of the United States Arbitration Act of 1925, 9 U.S.C. § 10, to vacate the arbitration award issued in this matter on July 23, 1980. Holt Hauling & Warehousing Systems, Inc. ("Holt Hauling"), Holt Marine Terminal, Inc., and B.H. Sobelman, Inc. ("Sobelman"), three of the eight named defendants, cross-move pursuant to section 9 of the Act, 9 U.S.C. § 9, for an order confirming the award. For the reasons that follow, the motion to confirm is granted and the motion to vacate is denied.

In addition, nonparty Charles Nisi, one of the three arbitrators herein, moves pursuant to Rule 45(b), Fed.R.Civ.P., to quash the subpoena duces tecum issued at plaintiff's behest to compel Nisi's testimony in connection with the award. By separate motion, defendants Waterside Ocean Navigation of Pennsylvania and Thomas Holt join in Nisi's application. Defendants Holt Hauling, Holt Marine Terminal and Sobelman also join in this application and further move to quash similar subpoenas duces tecum issued to the other two arbitrators. Inasmuch as the Court finds that the arbitration award is properly confirmed on the basis of the record before it, the subpoenas issued to the arbitrators are quashed.

### Background

Plaintiff, the owner of the merchant vessel ANDREA GRITTI, entered into a charter party dated September 25, 1975, with Waterside Ocean Navigation, Inc. ("Waterside-New York"), as agent. When certain charter hire payments were not made, plaintiff, contending that defendants were

the undisclosed principals of Waterside-New York, successfully petitioned this Court to compel defendants to submit to an arbitration proceeding to resolve the disputes arising out of these nonpayments. *Sidarma Societa Italiana di Armamento Spa, Venice v. Holt Marine Industries, Inc.,* 75 Civ. 6265 (S.D.N.Y. June 27, 1977), *appeal dismissed,* 573 F.2d 1295 (1977). In dismissing the appeal of this Court's earlier decision as not an appealable final decision pursuant to 28 U.S.C. § 1291, the court of appeals carefully noted that the order and decision compelling arbitration only determined that defendants were bound by the agreement to arbitrate contained in the charter party and did not constitute a decision on the merits of plaintiff's claim that defendants were liable for the charter hire payments. Indeed, in its order dismissing the appeal the court of appeals expressly stated that the arbitrators were "free to reconsider the agency issue."

After the court of appeals' decision was handed down, the parties proceeded to constitute an arbitration panel to consider their dispute. Plaintiff appointed Michael O'Riordan to the three-arbitrator panel, and defendants appointed Constantine Gratsos. O'Riordan and Gratsos then selected Nisi to occupy the third seat on the panel.

The panel began its hearings on August 3, 1978, and after nine sessions concluded the proceedings on June 26, 1979. As noted above, the panel issued its award some thirteen months later, on July 23, 1980. By the end of 1980, just over three years after the court of appeals ordered them to arbitration, the parties were once again before this Court in connection with their dispute.

### The Arbitration Award

Arbitrators Nisi and Gratsos joined in a majority decision, issued over a strong dissent by O'Riordan, that denied plaintiff's claim for damages against defendants and rejected plaintiff's argument that defendants were either undisclosed principals of or joint venturers with Waterside-New York. Although it found as an undisputed fact that the charter party had been breached,

the majority held that none of the defendants were liable for the damages suffered by plaintiff. Arbitrators Nisi and Gratsos determined that none of the defendants had participated in any acts of fraud. Finally, the majority opinion stated:

However sympathetic we are to the substantial loss suffered by this Owner, after painstaking re-analysis of all evidence and testimony, the majority of the panel could not avoid the final conclusion that at the time of fixing, the Owner of the ANDREA GRITTI obviously accepted the risk of relying on the name of Waterside Ocean Navigation Inc. of New York and apparently made no efforts to determine for whom they were acting as agents, did not require an escrow payment or a Letter of Credit, assignments of freights or any of the normal financial protective moves an owner should make to avoid such a catastrophe. It appears now that the Owner is seeking to hold liable, parties with whom it never bargained and of whom it had no previous knowledge.

In his dissent, arbitrator O'Riordan, after listing twenty paragraphs of what he considered to be "important facts," concluded that defendants "used the corporate form [Waterside-New York] for an illegitimate end that caused substantial damages to the owners of the Andrea Gritti." As O'Riordan recounted it, in its deliberations the panel unanimously agreed with this conclusion but could not decide on what legal theory to base a holding ascribing liability to defendants. In the dissenter's view, the two majority arbitrators ultimately rejected this "proper result" solely because their "personal business considerations caused them to overlook the use of the corporate form to intentionally avoid proper liability." O'Riordan characterized the majority's decision as "a gross miscarriage of justice."

### The Motion to Vacate

Plaintiff maintains that the arbitration award should be vacated because the majority arbitrators (1) displayed partiality against the ship owner and (2) acted in

manifest disregard of law. The Court deals with each of these two grounds in the paragraphs that follow. At the outset, however, it is important to note that in reviewing an arbitration award, a federal court's function is limited. An award will be vacated only on one of the grounds specified in section 10 of the Arbitration Act, 9 U.S.C. § 10, *Office of Supply, Republic of Korea v. New York Navigation Co.*, 469 F.2d 377, 379 (2d Cir. 1972), or if the conduct of the arbitrators constituted a "manifest disregard" of applicable law. *Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953). Moreover, this second, nonstatutory basis for upsetting an award, as an exception to the limitations of section 10, "must be severely limited, because extensive judicial review frustrates the basic purpose of arbitration, which is to dispose of disputes quickly and avoid the expense and delay of extended court proceedings." *Saxis Steamship Co. v. Multifacs International Traders, Inc.*, 375 F.2d 577, 582 (2d Cir. 1967).

1. *The claim of evident partiality.* As its only statutory attack on the validity of the arbitration award, plaintiff alleges that the majority arbitrators exhibited such "evident partiality" against plaintiff's interests that section 10(b), 9 U.S.C. § 10(b), compels that the award be vacated. Section 10(b) authorizes the vacating of an award "[w]here there was evident partiality or corruption in the arbitrators, or either of them." In asserting such a claim plaintiff bears the burden of proof, and in determining whether plaintiff has met its burden the Court must "scan the record to see if it demonstrates 'evident partiality' on the part of the arbitrators." *Saxis Steamship Co. v. Multifacs International Traders, Inc., supra,* 375 F.2d at 582. The Court has done so and finds plaintiff's claim of arbitrator partiality to be without support in the record.

Plaintiff bases its allegations of partiality on the dissenting opinion of arbitrator O'Riordan, as supplemented by an affidavit sworn by O'Riordan on December 9, 1980, submitted in support of plaintiff's motion to vacate. As noted briefly above, O'Riordan charges that the majority arbitrators, Nisi and Gratsos, placed their personal business interests ahead of their responsibility as arbitrators to be fair and impartial. In O'Riordan's view, as amplified by plaintiff in its arguments here, the other two arbitrators, to protect their own business interests, consciously chose not to reach the result they knew was correct in this case. As evidence of this, O'Riordan refers to a letter sent by Gratsos to Nisi during the period of the arbitrators' deliberations. In this letter, Gratsos referred to the three arbitrators' unanimous decision not to find one or more defendants liable to plaintiff by piercing the corporate veil or veils of defendants—a decision with which O'Riordan has no dispute—and rejected O'Riordan's suggestion that liability be ascribed to defendants on the theory that one or more of them were engaged in a joint venture with Waterside-New York. The letter, in pertinent part, reads:

> As Mr. O'Riordan stated in his letter of February 28th that we agreed unanimously not to pierce the corporate veil because the "Corporate Veil" concept is a vital part of our industry and should not be jeopardized by the activities of Mr. Holt, et al. [defendants], I feel a finding that a joint venture existed in this case would jeopardize our industry even more.

In the Court's view, plaintiff has failed to present any evidence of the type of arbitrator partiality necessary to vacate an award pursuant to 9 U.S.C. § 10(b). Plaintiff urges the Court to read Gratsos' letter as a statement of personal bias. But, even straining, the Court simply cannot do so. Gratsos refers to "our industry;" he does not mention his own business or even his personal interest in the matter before the panel. In this Court's opinion, to vacate an award for "evident partiality" a reviewing court must find some personal interest on the part of an arbitrator, whether pecuniary or otherwise, that extends beyond any personal views on the merits of the matter before him or her.

The Court agrees with plaintiff that this case presents a somewhat closer question than that presented to the court of appeals

in the matter recently decided in *International Produce, Inc. v. A/S Rosshavet*, 638 F.2d 548 (2d Cir. 1981), *cert. denied*, —— U.S. ——, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981). In the *International Produce* case, the court of appeals observed, there was "no claim of bias" on the part of the allegedly partial arbitrator. *Id.* at 551. Here, of course, plaintiff squarely alleges that the majority arbitrators were biased. Moreover, in this recent Second Circuit decision the court found "the record . . . completely bare of anything remotely resembling 'evident partiality.' " *Id.* In the instant case, construing the record in the light most favorable to plaintiff, the Court cannot say that the record is "completely bare" of anything helpful to plaintiff's argument.

On the other hand, this Court cannot agree with plaintiff's contention that in this instance "there was clear, unexplained evidence of 'evident partiality.' " *Id.* (citing *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968)). Unlike the situation in *Commonwealth Coatings*, for example, there is no evidence here that either or both of the majority arbitrators had any personal business relationship with one or more defendants. The most the Court finds plaintiff can fairly allege is that the majority arbitrators permitted their commercial business interests to influence their determination. Although plaintiff also asserts that arbitrators Nisi and Gratsos ruled as they did because a determination to hold defendants liable could have embarrassing prospective repercussions on the two arbitrators' personal business operations, there simply is no support in the record for such a conclusion. Arbitrator O'Riordan's gloss on the views of the other two members of the panel notwithstanding, the Court declines plaintiff's invitation to equate Nisi and Gratsos' concern for the welfare of their industry with the arbitrators' personal business interests.

As the court of appeals wrote in *International Produce, Inc. v. A/S Rosshavet, supra*, 638 F.2d at 552, "[t]he most sought-after arbitrators are those who are prominent and experienced members of the specific business community in which the dispute to be arbitrated arose." In this Court's view, it would not be in the interests of an industry such as the maritime industry, in which arbitration is frequently used as a means of dispute resolution, to require that arbitrators abstain from giving any consideration to the effect their decision might have on the industry generally. A rule constraining arbitrators in such a fashion "would seriously disrupt the salutary process of settling maritime disputes through arbitration." *Id.*

■■■ Of course there is a possibility, perhaps even a substantial likelihood, that any given arbitrator's views of what is good for the industry will be colored by the arbitrator's personal business experience. It may even be that, in considering the well-being of the industry generally, the arbitrator will perceive some future benefit to his or her personal business ventures that may result from the precedent established by the arbitration award. This alone, however, does not constitute the "evident partiality" section 10(b) requires before an arbitration award can be disturbed. To set aside an award for arbitrator partiality, "[t]he interest or bias . . . must be direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Tamari v. Bache Halsey Stuart Inc.*, 619 F.2d 1196, 1200 (7th Cir.), *cert. denied*, —— U.S. ——, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980) (quoting *United States Wrestling Federation v. Wrestling Division of the AAU, Inc.*, 605 F.2d 313, 318 (7th Cir. 1979)). The record here is completely barren of any evidence of such direct and definite partiality.

■■■ As further evidence in support of its claim of arbitrator partiality, plaintiff refers to the refusal of arbitrators Nisi and Gratsos to allow arbitrator O'Riordan to reopen the arbitration hearings in accordance with section 30 of the Society of Maritime Arbitrators Rules. Section 30 provides as follows:

The hearings may be reopened by the Arbitrator(s) on his own motion or upon application of a party for good cause

shown at any time before the award is made. If the reopening of the hearing would prevent the making of the award within the specific time agreed upon by the parties in the contract out of which the controversy has arisen, the matter may not be reopened unless the parties agree upon the extension of such time limit. When no specific date is fixed in the contract, the Arbitrator(s) may reopen the hearings and the Arbitrator(s) shall have 90 days from the closing of the reopened hearings within which to make an award.

In O'Riordan's view, this provision authorizes any one of the members of an arbitration panel to call for the reopening of hearings as of right. The Court reads section 30 differently. In the Court's opinion, the only reasonable construction of this rule requires a majority decision by the panel members before hearings can be reopened pursuant to section 30. Thus, in this instance, the majority arbitrators were well within their rights to deny O'Riordan's request to reopen the proceedings.

2. *The averment of manifest disregard of law.* Turning to the nonstatutory ground upon which plaintiff bases its alternative attack on the validity of the arbitration award, the Court finds plaintiff's claim that the majority arbitrators manifestly disregarded applicable law to be of even less merit than its allegations of arbitrator partiality. Plaintiff maintains that the arbitrators refused to address the questions of principal and agent that the court of appeals left them "free to consider." Even after receiving extensive post-hearing memoranda on the subject, plaintiff argues, the majority arbitrators ignored the three legal predicates pursuant to which plaintiff claims the arbitrators could ascribe liability to defendants: (1) by piercing the corporate veil of Waterside-New York and finding it to have acted as "alter ego" for one or more defendants, (2) by considering Waterside-New York to have been engaged in a joint venture with one or more defendants, and (3) by determining that Waterside-New York acted as agent for one or more defendants, who were its undisclosed principals. This argument is belied by the record.

██ Under federal maritime law, "an undisclosed principal is bound by the contracts made on his account by an agent acting within his authority." *Kirno Hill Corp. v. Holt,* 618 F.2d 982, 985 (2d Cir. 1980). Thus, if the arbitrators determined that one of the defendants was an undisclosed principal of Waterside-New York that defendant could be held liable to plaintiff under the charter party. The record amply demonstrates that the arbitrators were fully aware of this undisclosed-principal rule, and there is no evidence that the majority arbitrators disregarded it. Rather, the record reveals that the arbitrators simply made the factual determination that none of the defendants was an undisclosed principal of Waterside-New York. Even if the majority was mistaken in this determination, moreover, the award must still stand, for an arbitration award may not be vacated for mistakes of fact. *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S.A.,* 312 F.2d 299, 300 (2d Cir.), *cert. denied,* 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963).

██ The majority arbitrators found that plaintiff "accepted the risk of relying" on Waterside-New York and "made no efforts to determine for whom [it] was acting as agent." Assuming *arguendo* that this was the basis on which the majority decided not to ascribe liability to defendants as undisclosed principals, it may well have been an erroneous application of the law. *See Orient Mid-East Lines v. Albert E. Bowen, Inc.,* 458 F.2d 572, 577 (2d Cir. 1972) (noting "well recognized rule" that duty not on the contracting party to ascertain name of undisclosed principal). Even so, however, the award cannot be upset. For an award may not be vacated for errors of law by the arbitrators. *Office of Supply, Republic of Korea v. New York Navigation Co., supra,* 469 F.2d at 379.

██ To vacate an arbitration award for manifest disregard of law there must be "something beyond and different from a mere error in the law or failure on the part

of the arbitrators to understand or apply the law." *Drayer v. Krasner,* 572 F.2d 348, 352 (2d Cir.), *cert. denied,* 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978) (quoting *San Martine Compania de Navigacion, S.A. v. Saguenay Terminals Ltd.,* 293 F.2d 796, 801 (9th Cir. 1961)). *See also Reichman v. Creative Real Estate Consultants, Inc.,* 476 F.Supp. 1276, 1282–83 (S.D.N.Y.1979). Plaintiff has not demonstrated, as it must, that the majority arbitrators deliberately disregarded what they knew to be the law in order to reach the result they did. *San Martine Compania de Navigacion, S.A. v. Saguenay Terminals Ltd., supra,* 293 F.2d at 801; *Eddie Steamship Co. v. Czarnikow-Rionda Co.,* 480 F.Supp. 731, 733–34 n. 4 (S.D.N.Y.1979); *Dan River, Inc. v. Cal-Togs, Inc.,* 451 F.Supp. 497, 505 (S.D.N.Y. 1978).

■ Similarly, the arbitration panel's refusal to hold defendants liable by piercing the corporate veil of Waterside-New York or by finding the existence of a joint venture was not a manifest disregard of law. The panel expressly addressed both the corporate veil and joint venture questions. Rejecting plaintiff's argument to the contrary, the majority explicitly found as a factual matter that defendants did not use Waterside-New York to perpetrate a fraud. In addition, the arbitrators certainly could reasonably have found facts to support a conclusion that none of the defendants so dominated Waterside-New York that it was engaging in one of the defendants' businesses rather than its own corporate business. *See Kirno Hill Corp. v. Holt, supra,* 618 F.2d at 985. Again, the Court is unpersuaded by plaintiff that it should consider these findings of fact to be evidence of a conscious disregard of the applicable law.

## The Motion to Quash

Perhaps recognizing the paucity of support in the record for its contention that the panel's award was arrived at improperly, plaintiff served a subpoena duces tecum on each of the three arbitrators. Plaintiff seeks to depose the panel members to inquire into the reasons behind their decision. Maintaining that the record demonstrates clear evidence of arbitrator impropriety, plaintiff contends such discovery is necessary for it to explore the allegations contained in arbitrator O'Riordan's dissent.

As the court of appeals recently observed in *Andros Compania Maritima, S.A. v. Marc Rich & Co.,* 579 F.2d 691, 697 (2d Cir. 1978), given the liberal discovery provisions of the Federal Rules of Civil Procedure, at first blush it seems reasonable and appropriate for those persons most familiar with the matter in issue, the arbitrators, to be available for oral deposition. But on closer inspection, as the *Andros* court reasoned, "in the special context of what are in effect post hoc efforts to induce arbitrators to undermine the finality of their own awards, . . . any questioning of arbitrators should be handled pursuant to judicial supervision and limited to situations where clear evidence of impropriety has been presented." 579 F.2d at 702. Accordingly, under the *Andros* rule the subpoenas issued to the arbitrators at plaintiff's request can be of no force and effect unless the Court finds that judicially supervised testimony by the arbitrators is appropriate.

■ After a careful review of the record and consideration of the arguments ably presented by counsel, the Court finds that it would be inappropriate to direct the arbitrators to submit to questioning in connection with their deliberations in this matter. For the reasons discussed in more detail above, the Court remains unpersuaded that there is anything in the record approaching the "clear evidence of impropriety" required before arbitrator testimony can be compelled. "Arbitration cannot achieve the savings in time and money for which it is justly renowned if it becomes merely the first step in lengthy litigation." *National Bulk Carriers, Inc. v. Princess Management Co.,* 597 F.2d 819, 825 (2d Cir. 1979). Requiring that "clear evidence of impropriety" be produced before arbitrators can be compelled to testify on their deliberations is but one means of protecting whatever remaining value arbitration has as an efficient means of dispute resolution.

*Conclusion*

Plaintiff's motion to vacate the award is denied, and defendants' cross-motion to confirm is granted. Arbitrator Nisi's motion to quash the subpoena duces tecum directed to him is granted. Without reaching the question raised by plaintiff of defendants' standing to move to quash the subpoenas issued to the other two arbitrators, in view of the decision herein that arbitrator testimony is inappropriate in this case, the Court directs that the subpoenas directed to arbitrators Gratsos and O'Riordan be quashed. Defendants' motions to quash these two subpoenas therefore are denied as moot.

It is ordered that the subpoenas issued to arbitrators Nisi, Gratsos and O'Riordan be, and hereby are, quashed. The parties are directed to settle a judgment on notice confirming the arbitration award.