**C.A. TINAWAY, Plaintiff,**

v.

**MERRILL LYNCH & CO., INC., et al., Defendants.**

**No. 83 Civ. 8298 (SWK).**

United States District Court, S.D. New York.

May 20, 1987.

C.A. Tinaway, Jackson Heights, N.Y., pro se.

Mandel, Weiner & Block by Philip M. Mandel, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This action is brought under Sections 9 and 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78i, 78j, and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5. Plaintiff C.A. Tinaway ("Tinaway"), proceeding *pro se,* instituted this action alleging misrepresentation and excessive trading on his stock brokerage account against Merrill Lynch & Co., Inc. ("Merrill Lynch") and certain of its employees. This action presently is before the Court on Tinaway's application for appointment of counsel and Merrill Lynch's motion to alter or amend the Court's April 7, 1987 Memorandum Opinion and Order (the "April 7 Order"), which vacated the prior arbitration award and retained the action in its entirety. *Tinaway v. Merrill Lynch & Co., Inc.,* 658 F.Supp. 576 (S.D.N.Y.1987). For the reasons set forth below, Tinaway's application for appointment of counsel is granted and Merrill Lynch's motion to amend is denied.

## FACTS

Tinaway, a seventy-eight year old retired attorney with a severe hearing impairment and other disabilities resulting from a recent stroke, alleges that Merrill Lynch and certain of its employees invested his monies in a certain stock which had publicly disclosed to the Securities and Exchange Commission (the "SEC") two months before the investment that a strike had suspended all of the company's production for the preceeding seven months. Merrill Lynch and the broker handling Tinaway's account were aware of this disclosure. This investment allegedly resulted in the loss of Tinaway's entire stock portfolio and other savings.

Tinaway filed this action and, after demand by Merrill Lynch based on a pre-dis-

pute arbitration agreement in his contract with Merrill Lynch, Tinaway consented to arbitration of his grievance by the National Association of Securities Dealers (the "NASD") "for Reconstitution of claimant's $25,000 face-valued bonds portfolio, plus $8,040 for $2,680 coupons missed in 1981, 82, 83, plus interests, costs and legal fee estimated by Arbitrators." Tinaway specifically reserved from the arbitration process his "right to the moral, emotional and eventually punitive damages as specified in" his complaint in this action.

The NASD Arbitrators conducted a hearing pursuant to the NASD rules at which testimony was taken, exhibits were introduced, and oral argument was heard on behalf of all parties. The NASD Arbitrators rendered an award providing in full that:

The undersigned, being the arbitrators selected to hear and determine a matter in controversy between the above mentioned Claimant and Respondents as set forth in a submission to arbitration signed by the Parties on August 27, 1984, February 15, 1985, January 15, 1985 and June 28, 1985, respectively;

And, that having heard and considered the proofs of the parties, have decided and determined that in full and final settlement of the above-captioned matter, that Respondent Merrill Lynch, Pierce, Fenner & Smith shall be liable for and shall pay to the Claimant the sum of One Thousand Dollars and No Cents ($1,000.00);

And, that Respondent Robert Brinckerhoff shall be liable for and shall pay to the Claimant the sum of One Thousand Dollars and No Cents ($1,000.00);

And, that the claim of the Claimant against Respondent Lou Pagano is dismissed in all respects;

And that each party shall bear its own costs and expenses including attorney's fees;

And, that the $350.00 filing fee previously deposited by the claimant with the NASD shall be refunded.

At the conclusion of the NASD arbitration, defendants tendered a check in the amount of $2,000.00 to Tinaway, who rejected it and returned it to defendants. This Court then reinstated this action to its active docket and ordered the parties to file cross-motions to confirm and vacate the NASD Arbitrators' award. Tinaway moved to vacate the award on the ground that the NASD Arbitrators exceeded their powers, or, alternatively, if the award were confirmed, to proceed to trial on the issues in this action which Tinaway had expressly reserved from arbitration. Merrill Lynch cross-moved to confirm the award and to dismiss this action.

The Court, in its April 7 Order, found "evident partiality" on the part of the arbitrators towards Merrill Lynch and vacated the award pursuant to 9 U.S.C. § 10(b). Reference is made to that Order for a further discussion of the Court's determination. In the April 7 Order, the Court also reminded Tinaway that he had the option of applying to the Court for the appointment of counsel.

## DISCUSSION

Tinaway has applied for the appointment of counsel through the Court's *pro bono* resources. Merrill Lynch, on the other hand, has moved for an order, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, altering or amending the April 7 Order to confirm the arbitration award and to dismiss this action.

*Appointment of Counsel*

The authority for a district judge to appoint counsel in civil cases originates in 28 U.S.C. § 1915(d) which provides:

The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

28 U.S.C. § 1915(d). In civil cases, federal courts have the authority to appoint counsel, but generally are not required to do so. *In re Martin-Trigona,* 737 F.2d 1254, 1260 (2d Cir.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 807, 88 L.Ed.2d 782 (1986). The determination of whether appointment of

counsel is necessary rests with the sound discretion of the district court. *Id.*

Although clear legal principles governing the operation of Section 1915(d) appointment of counsel in this circuit are few, in *Hodge v. Police Officers (Colon)*, 802 F.2d 58 (2d Cir.1986), the Second Circuit recently held that, while each case must be decided upon its own particular facts, in deciding whether to appoint counsel, the district judge should

> first determine whether the [litigant's] position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the [litigant's] ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the individual's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61–62; *Jackson v. Francis*, 646 F.Supp. 171, 172 (E.D.N.Y. 1986).

■ Consideration of the *Hodge* factors here leads the Court to conclude that counsel should be appointed for Tinaway. As a threshold matter, Tinaway has demonstrated by the very substance of his claim that his claim has some chance of success on the merits. In addition, the legal issues raised in Tinaway's complaint are federal securities fraud claims which are of sufficient complexity to require representation by counsel in order to assure Tinaway meaningful access to the courts. This is particularly so here as Tinaway, although a retired attorney who appears to have some understanding of federal civil procedure, is a seventy eight year old stroke victim who is virtually deaf and who has difficulty walking.

Furthermore, as the language of 28 U.S.C. § 1915(d) requires that the litigant be unable to obtain counsel before appointment will even be considered, *Hodge*, 802 F.2d at 61, a plaintiff must at a minimum present evidence that he has undertaken a

"reasonably diligent effort" to obtain counsel on his own before the court will favorably consider his application for appointment of counsel from its limited *pro bono* resources, *Jenkins v. Chemical Bank*, 721 F.2d 876, 880 (2d Cir.1983) (quoting *Bradshaw v. Zoological Society of San Diego*, 662 F.2d 1301, 1309 (9th Cir.1981)). Tinaway has done so. Despite his physical impairments, Tinaway made diligent efforts to approach attorneys to handle his case. According to his application for appointment of counsel, those attorneys approached by Tinaway demanded a $5,000 retainer which Tinaway does not possess. Indeed, other than a monthly pension of $178.00 from a former employer and approximately $2,000 in stocks, Tinaway has no resources with which to pay counsel.

Finally, the Court finds Tinaway's age, the nature of his disabilities, and the possibility that his condition might deteriorate if Tinaway is forced to continue the rigors of this *pro se* litigation against his able opponents to be special reasons why the appointment of counsel would be more likely to lead to a just determination in this action than it would in other similar litigation.

Accordingly, taking into consideration the particular facts of this case and applying the *Hodge* factors, the Court holds that Tinaway's application for the appointment of counsel should be granted.

### Motion to Amend

The Court, in its April 7 Order, vacated the arbitrators' $2,000 award to Tinaway and retained the action in its entirety. The Court determined that its

> jurisdiction under Sections 9 and 10 of the Federal Arbitration Act is severely limited, since, if it were otherwise, the ostensible purpose for resort to arbitration, which is the avoidance of litigation, would be frustrated. *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir.), *cert. denied*, 363 U.S. 843 [80 S.Ct. 1612, 4 L.Ed.2d 1727] (1960). The Court's role is restricted to ascertaining whether there exists one of the specific grounds for vacating the award, and, if none exists, Section 9 requires that, on

application of any party to the arbitration proceeding, the Court confirm the award. *Steamship Co. v. Multifacs International Traders, Inc.,* 375 F.2d 577, 582 (2d Cir.1967).

There is no allegation or evidence that the arbitration award should be vacated because it was procured by corruption, fraud or undue means, or because the arbitrators were guilty of other misconduct by which the rights of any party might have been prejudiced or because of manifest disregard of the law. Nor is there allegation or evidence of any statutory grounds for modification or correction of the award.

Tinaway contends that, by ignoring written testimony of Tinaway's claimed damages of $35,720 and substituting their unexplained $2,000 award, the NASD Arbitrators exceeded their powers such that a mutual, final and definitive award was not made under 9 U.S.C. § 10(d). Merrill Lynch, on the other hand, urges that there is no basis for Tinaway's contention and that the arbitration award should be confirmed as a result.

The Court is mindful that the NASD Arbitrators' determination provided no basis whatsoever for finding Merrill Lynch and its employee liable but reducing the amount of the award from the documented loss of $35,720 to $2,000, a mere five percent of the documented loss. However, the arbitrators were under no obligation to give reasons for their decision, *Kurt Orban Co. v. Angeles Metal Systems,* 573 F.2d 739, 740 (2d Cir.1978), and the courts are instructed that where "a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed," *Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211 (2d Cir.1972). Furthermore, here a "mutual, final and definite award upon the subject matter submitted" appears to have been made, and this argument therefore is not available to Tinaway.

The Court, however, is unable to infer a ground for the arbitrators' decision from the facts of this case. Merrill Lynch admits that it knew of the tenuous position of Tinaway's investment and did not disclose the circumstances to Tinaway when it invested his monies in that stock. Under these circumstances, reduction of the amount of the award by ninety-five percent can only represent "evident partiality" on the part of the arbitrators towards Merrill Lynch. As such, the award may be vacated by the Court in accordance with 9 U.S.C. § 10(b). Accordingly, the Court vacates the NASD Arbitrators' award.

*Tinaway v. Merrill Lynch & Co., Inc.,* 658 F.Supp. 576 (S.D.N.Y.1987).

Merrill Lynch now moves for an order, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, altering or amending the Court's April 7 Order to confirm the arbitration award and to dismiss this action. Merrill Lynch correctly points out that it should have the opportunity to address the construction of the evident partiality ground for vacature of an arbitration award, as contained in the Federal Arbitration Act, 9 U.S.C. § 10, and precedents relating thereto, because evident partiality had not been alleged by Tinaway. Merrill Lynch then argues that evident partiality, as a matter of law, cannot be inferred from the award.

 Merrill Lynch first directs the Court's attention to *Sidarma Societa Italiana Di Armamento SPA, Venice v. Holt Marine Industries, Inc.,* 515 F.Supp. 1302 (S.D.N.Y.), *aff'd,* 681 F.2d 802 (2d Cir.1981), for the proposition that "a reviewing court must find some personal interest on the part of the arbitrator, whether pecuniary or otherwise, that extends beyond any personal views on the merits of the matter before him or her" in order to vacate an award for evident partiality. The Court, however, does not find this proposition adverse to the Court's April 7 Order. While there is no contention here that the arbitrators had a *pecuniary* interest in the outcome of this arbitration, the Court may infer some other type of personal interest here where the Court is unable to infer a ground for the award *and* the claim is a Section 10b–5 securities fraud claim. Arbitration of Section 10b–5 claims is disap-

proved by the Second Circuit on the ground that plaintiffs have a statutory right to have such claims decided in federal court. *McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94 (2d Cir.), *cert. granted,* — U.S. ——, 107 S.Ct. 60, 93 L.Ed.2d 20 (1986).

Furthermore, *Sidarma* did not involve a securities fraud claim. The *Sidarma* court, within the context of a maritime arbitration award, held that

As the court of appeals wrote, "[t]he most sought-after arbitrators are those who are prominent and experienced members of the specific business community in which the dispute to be arbitrated arose." In this Court's view, it would not be in the interest of an industry such as the maritime industry, in which arbitration is frequently used as a means of dispute resolution, to require that arbitrators abstain from giving any consideration to the effect their decision might have on the industry generally. A rule constraining arbitrators in such a fashion "would seriously disrupt the salutory process of settling maritime disputes through arbitration."

Of course there is a possibility, perhaps even a substantial likelihood, that any given arbitrator's views of what is good for the industry will be colored by the arbitrator's personal business experience. It may even be that, in considering the well-being of the industry generally, the arbitrator will perceive some future benefit to his or her personal business ventures that may result from the precedent established by the arbitration award. This alone, however, does not constitute the "evident partiality" section 10(b) requires before an arbitration award can be disturbed.

*Sidarma,* 515 F.Supp. at 1307 (citations omitted). This rule, however, has no application to an arbitration proceeding involving a securities fraud claim. Within the context of the securities industry, which is extensively regulated by federal law to prohibit, among other things, unfair advantage on the part of "insiders", that some arbitrator perceived "some future benefit to his or her personal business ventures that may result from the precedent established by the arbitration award" may provide that insider with the very type of unfair advantage proscribed by the federal securities laws. Thus, the rule of *Sidarma* should not be applied where the claims submitted to arbitration involve alleged securities fraud.

Merrill Lynch also cites *Reichman v. Creative Real Estate Consultants, Inc.,* 476 F.Supp. 1276, 1284 (S.D.N.Y.1979) (a real estate contract dispute where the parties explicitly disavowed any claim of bias), in support of application of the rule of *Sidarma* here. For the same reasons that *Sidarma* is inapposite to the instant action, so too is *Reichman.*

Merrill Lynch also cites *Isaacson v. Hayden, Stone Incorporated,* 359 F.Supp. 1050, 1052 (S.D.N.Y.1973), and *Merrill Lynch, Pierce, Fenner & Smith v. Bobker,* 808 F.2d 930, 937 (2d Cir.1986), for the proposition that the size of an arbitration award should not be a factor in vacating an award. *Isaacson,* however, is not in point, as the size of the award was neither in issue nor argued as a basis for vacature; indeed, the ground alleged was the arbitrator's nondisclosure of dealings, allegedly not in the ordinary course of business, with a party to the arbitration. In *Bobker,* the Second Circuit held that the arbitrators' estimate of lost profits, where "it was impossible to determine the precise date and lower market price at which [plaintiff] would have purchased 2,000 shares to cover his short sale" and "[a]n estimate was therefore necessary," was appropriate under the circumstances of that case. *Bobker,* 808 F.2d at 937. *Bobker,* therefore, is also not in point. No estimate of Tinaway's damages is necessary here, as the precise amount of Tinaway's loss has been determined and is contained in Tinaway's complaint.

■ Finally, Merrill Lynch argues that, because Tinaway expressly consented to arbitrate his federal securities claims, the Supreme Court's holding in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), and the Second Circuit's holding in

*McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94 (2d Cir.), *cert. granted,* —— U.S. ——, 107 S.Ct. 60, 93 L.Ed.2d 20 (1986), declining to enforce pre-dispute arbitration clauses asserted under the federal securities laws, are not applicable and that Tinaway, having abandoned his federal court action, is not now entitled to reactivate his federal securities claims which he voluntarily relinquished. The Court, however, is unpersuaded by Merrill Lynch's assertions.

As the *McMahon* court explained,

In *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court held that, despite the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*, claims arising under § 12(2) of the Securities Act of 1933 ("1933 Act") are not arbitrable. In reaching this result, the Court pointed out that an agreement to arbitrate claims is void under § 14 of the 1933 Act as a stipulation binding the securities customer to waive compliance with a provision of the Act. The provision referred to is the aggrieved party's right to select the judicial forum under § 22(a) of the 1933 Act.

As our late colleague, Judge Friendly, noted in *Colonial Realty v. Bache & Co.*, 358 F.2d 178, 183 n. 5 (2 Cir.), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966), the non-waiver provision of § 14 of the 1933 Act has an almost identical counterpart in § 29(a) of the 1934 Act. In view of *Wilko* and the similarity of the non-waiver provisions of the 1933 and 1934 Acts, we consistently have held that § 10(b) and Rule 10b–5 claims are not arbitrable. In *Greater Continental Corp. v. Schechter*, 422 F.2d 1100, 1103 (2 Cir.1970), we observed that alleged violations of Rule 10b–5 were "properly litigated in the courts where a complete record is kept of the proceedings and findings and conclusions are made." We also pointed out the similarity between § 14 of the 1933 Act and § 29(a) of the 1934 Act. *Id.* In *Allegaert v. Perot*, 548 F.2d 432, 436–38 (2 Cir.), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977), we reiterated the view that claims under § 10(b) of the 1934 Act are not arbitrable, noting that the broad policy questions involved in securities law claims require a judicial forum for resolution of disputes. Again in *AFP Imaging Corp. v. Ross*, 780 F.2d 202, 205 (2 Cir.1985), we held that, in an action which alleged violations of § 10(b) and Rule 10b–5, an arbitration clause in the contract was "unenforceable under the law of this Circuit".

*McMahon*, 788 F.2d at 96–97.

As the Second Circuit noted in *Allegaert, supra,* the broad policy questions involved in securities law claims *require* a federal forum for resolution of disputes. Tinaway, despite that he agreed to arbitration, appears to have been in accord with this policy when he specifically reserved portions of his claims from the arbitration process. Although Merrill Lynch argues that the reserved portions of Tinaway's claims sound in state law and thus that no portions of Tinaway's federal claims were reserved from arbitration, Tinaway's complaint presents only federal securities claims and thus it is not reasonable to conclude that Tinaway, acting *pro se,* intended to relinquish his federal securities claims in their entirety to arbitration. Indeed, Tinaway's reply papers confirm that this was not his intention.

It is axiomatic that *pro se* pleadings are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520, 596, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). As a result, the Court refuses to penalize Tinaway, who, although a retired attorney, claims no expertise or experience in securities litigation and who is acting in a *pro se* capacity here, for less than artful draftsmanship or for lack of understanding of his right to have his federal securities claims decided in federal court despite the existence of a pre-dispute arbitration clause in his contract with Merrill Lynch.

Accordingly, the Court finds that the Second Circuit's holding in *McMahon* is applicable here. Tinaway's agreement with Merrill Lynch contained a pre-dispute arbitration clause. When the dispute

arose, Merrill Lynch wrote to Tinaway demanding that he submit to arbitration pursuant to his contract. That Tinaway then agreed to arbitrate portions of his claims does not diminish the fact that the agreement to arbitrate is contained in a boilerplate pre-dispute arbitration clause in Tinaway's contract with Merrill Lynch and that this is the very type of clause that has been held unenforceable by the Second Circuit in *McMahon.*

While the Court notes that the Supreme Court has granted *certiorari* in *McMahon* and that this issue will soon receive that Court's renewed attention, this Court will adhere to the settled law of this Circuit as it stands today in deciding this motion and will not speculate as to what the Supreme Court may do with our settled law at some future date. *See Suthirachartkul v. Shearson Lehman Brothers Inc.*, 806 F.2d 37, 39 (2d Cir.1986).

Accordingly, for the reasons enunciated by the Court in its April 7 Order and based on the Second Circuit's mandate in *McMahon,* Merrill Lynch's motion for an order, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, altering or amending the Court's April 7 Order to confirm the arbitration award and to dismiss this action as a result is denied without prejudice to renewal upon an appropriate showing of change in existing law. Pursuant to the Court's April 7 Order, the Court will retain this action in its entirety so that Tinaway may receive the federal forum which he deserves for the resolution of his dispute.

SO ORDERED.