C.A. TINAWAY, Plaintiff,

v.

**MERRILL LYNCH AND CO., INC., et al., Defendants.**

**No. 83 CIV. 8298 (SWK).**

United States District Court, S.D. New York.

July 28, 1988.

---

C.A. Tinaway, Jackson Heights, N.Y., pro se.

Mandel, Weiner & Block by Philip M. Mandel, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Presently before the Court is defendants' motion to renew and grant their motion for an order amending this Court's Memorandum Opinion and Orders dated April 7, 1987, 658 F.Supp. 576 (S.D.N.Y.1987), and May 20, 1987, 661 F.Supp. 937 (S.D.N.Y. 1987), ("April 7 opinion" and "May 20 opinion", respectively) so as to confirm the arbitration award made in this matter, or in the alternative, for an order certifying an interlocutory appeal pursuant to 28 U.S.C. § 1292 from the April 7 and May 20 opinions. Plaintiff brought this action pursuant to sections 9 and 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S. C. § 78i, 78j, and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5. Plaintiff, a seventy-eight year old retired attorney, initially brought this action *pro se* but is now represented by counsel. Defendants Merrill Lynch and Company ("Merrill Lynch") and certain of its employees allegedly invested Tinaway's monies in a stock as to which it had previously been disclosed to the Securities and Exchange Commission ("SEC") two months before the investment was made that a strike had suspended all of the company's production for the preceding seven months. Tinaway alleges that the broker with whom he dealt lulled him into making unwise investments that ultimately

cost him his life savings of approximately $40,000.

## Background

### 1. Arbitration

The facts of this case have been set forth in detail in both the April 7 and May 20 opinions, and familiarity with each is presumed. Certain facts germane to this discussion are developed here. Tinaway entered into a standard Customer Agreement with Merrill Lynch at the time he opened his commodities trading account in June, 1980. Paragraph 11 of the Customer Agreement states in relevant part that the parties agree to submit to arbitration any controversy arising out of the customer's business or the Customer Agreement. *See* Exhibit A to Affidavit of Scott Tross ("Tross Affidavit"). Tinaway commenced this action in January, 1983, alleging violations of the securities laws. Defendants moved for an order dismissing the claims and compelling arbitration in accordance with the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Plaintiff wrote this Court in June, 1984 to state that he withdrew his opposition to defendants' motion to compel arbitration. He further stated that the choice of arbitrators and of the procedure to be followed would be left to the discretion of Merrill Lynch provided that they acted within thirty days. *See* Exh. C to Tross Aff.

Tinaway commenced an arbitration proceeding in August, 1984 before the National Association of Securities Dealers, Inc. ("NASD") and signed NASD's Uniform Submission Agreement, which provides at paragraph 4 that

> [t]he undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

*See* Exh. E to Tross Aff. Three NASD arbitrators, following a hearing, awarded Tinaway $1000 each against Merrill Lynch and Robert Brinkerhoff, the broker with whom Tinaway dealt. The arbitrators dismissed Tinaway's claims against another Merrill Lynch employee who is not a party to this action. Defendants tendered a $2000 check to Tinaway in June, 1986 in satisfaction of the award. Plaintiff returned the check, informing defendants that he was seeking reconsideration of the award by the arbitrators and restoration of this action to the Court's active docket. NASD subsequently informed Tinaway in July, 1986 that it would not reconsider its decision, and as a consequence the Court restored the action to the active docket.

### 2. Motion Practice

Plaintiff moved to vacate the arbitrators' award, and defendants cross-moved to confirm it. In the April 7th opinion, the Court vacated the arbitrators' award pursuant to 9 U.S.C. § 10(b), on the grounds that the small size of the award in light of the amount claimed, and the Court's inability to infer a basis for the arbitrators' decision when none was given, presented evidence of "evident partiality" on the part of the arbitrators:

> The Court, however, is unable to infer a ground for the arbitrators' decision from the facts of this case. Merrill Lynch admits that it knew of the tenuous position of Tinaway's investment and did not disclose the circumstances to Tinaway when it invested his monies in that stock. Under these circumstances, reduction of the amount of the award by ninety-five percent can only represent "evident partiality" on the part of the arbitrators toward Merrill Lynch.

658 F.Supp. at 579. The Court vacated the arbitrators' decision in its entirety and retained jurisdiction over the action, refusing to remand the action for further arbitration.

The Court subsequently considered plaintiff's motion for appointment of counsel and defendants' motion to alter or amend the Court's April 7 opinion. In its May 20 opinion, the Court granted plaintiff's application, but denied defendants' motion. Merrill Lynch argued that as a matter of

law evident partiality could not be inferred from the size of the award. The Court disagreed and reasoned as follows:

> While there is no contention here that the arbitrators had a *pecuniary* interest in the outcome of this arbitration, the Court may infer some other type of personal interest here where the Court is unable to infer a ground for the award *and* the claim is a Section 10b–5 securities fraud claim.

661 F.Supp. at 941. The Court based its decision, at least in part, on *McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94 (2d Cir.1986), *rev'd*, — U.S. —, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), which noted this Circuit's disapproval of arbitration in § 10(b) cases "on the ground that plaintiffs have a statutory right to have such claims decided in federal court." *Tinaway, supra*, 661 F.Supp. at 942.

The Court noted in the May 20 opinion that the Supreme Court had recently granted certiorari in *McMahon* and denied defendants' motion without prejudice to renewal upon an appropriate showing of change in existing law. *Id.* at 944. The Supreme Court decided *McMahon* on June 3, 1988, and this motion ensued.

## Discussion

The Supreme Court in *McMahon* explicitly extended the applicability of the Arbitration Act to securities fraud claims brought pursuant to § 10(b). The Supreme Court first noted that the "Arbitration Act ... establishes a 'federal policy favoring arbitration,' *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), requiring that 'we rigorously enforce agreements to arbitrate.' *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. [213], 221, 105 S.Ct. [1238], 1242 [84 L.Ed.2d 158 (1985) ]." *McMahon, supra*, 107 S.Ct. at 2337. The "centerpiece provision" of the Arbitration Act "makes a written agreement to arbitrate ... 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' " *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) (quoting section 2 of the Arbitration Act, 9 U.S.C. § 2).

The *McMahon* Court concluded that a pre-dispute agreement to arbitrate would not waive any substantive rights granted by the securities laws and should be enforced with the same rigor as other arbitration clauses. *Id.*, 107 S.Ct. at 2343. The Court rejected the notion, expressed in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), that a judicial forum was required to protect the substantive rights created by the securities laws. *Id.*, 107 S.Ct. at 2338. The Court found it "difficult to reconcile *Wilko* 's mistrust of the arbitral process with this Court's subsequent decisions involving the Arbitration Act * * * [T]he mistrust of arbitration that formed the basis for the *Wilko* opinion in 1953 is difficult to square with the assessment of arbitration that has prevailed since that time." *Id.* at 2340–41. Based on this line of analysis, the Court will reexamine its conclusions in the April 7 and May 20 opinions.

The general principles of law enunciated in this Court's earlier opinions remains valid. As this Court stated in its April 7 opinion and repeated in the May 20 opinion,

> This Court's jurisdiction under Sections 9 and 10 of the Federal Arbitration Act is severely limited, since, if it were otherwise, the ostensible purpose for resort to arbitration, which is the avoidance of litigation, would be frustrated. *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir.), *cert. denied*, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960). The Court's role is restricted to ascertaining whether there exists one of the specific grounds for vacating the award, and, if none exists, Section 9 requires that, on application of any party to the arbitration proceedings, the Court confirm the award. *Stemaship Co. v. Multifacs International Traders, Inc.*, 375 F.2d 577, 582 (2d Cir.1967).

658 F.Supp. at 578; 661 F.Supp. at 940. Each of the two opinions concluded that the arbitrators' decision to award only $2000, roughly five percent of the amount alleg-

edly lost, manifested "evident partiality", one of the grounds for vacating an arbitration award. *See* 9 U.S.C. § 10(b). The May 20 opinion rejected defendants' argument that evident partiality, as a matter of law, could not be deduced solely from the size of the award. The Court reasoned that non-pecuniary personal interest could be inferred in securities fraud cases, even though it could not be so inferred in other types of cases. 661 F.Supp. at 941–42.

It is this latter legal conclusion which is no longer valid in light of the *McMahon* decision. This Court reads *McMahon* to mean that written agreements to arbitrate claims arising out of securities transactions that would be cognizable under the federal securities laws are to be enforced in the same manner as other arbitration agreements. Consequently, the basis on which this Court distinguished cases cited by defendants, that personal bias could be shown by means other than pecuniary interest or some other actual relationship between the parties in cases alleging federal securities law violations, is no longer supported by existing law. For example, in its May 20 opinion this Court distinguished *Sidarma Societa Italiana Di Armamento SPA, Venice v. Holt Marine Industries, Inc.*, 515 F.Supp. 1302 (S.D.N.Y.), *aff'd*, 681 F.2d 802 (2d Cir.1981) on the grounds that the holding could not be extended to the area of securities fraud since arbitration was viewed with disfavor in such cases. 661 F.Supp. at 942. *McMahon* now compels a different conclusion.

In *Sidarma*, the plaintiff sought to vacate an arbitrators award for "evident partiality" based on the arbitrators' apparent refusal to be fair and impartial so as to protect their own business interests in the maritime industry. 515 F.Supp. at 1306. Plaintiff based his argument in part on similar accusations made by a dissenting arbitrator. The Court found that the majority arbitrators' references to the interests of the industry did not amount to evident partiality since no mention was made of the arbitrator's interest in his personal business or in the matter before him. Instead, the Court decided that "to vacate an award for 'evident partiality' a review-

ing court must find some personal interest on the part of an arbitrator, whether pecuniary or otherwise, that extends beyond any personal views on the merits of the matter before him or her." *Id.* The Court noted that the plaintiff had presented no evidence that "either or both of the majority arbitrators had any personal business relationship with one or more of the defendants." *Id.* at 1307 (distinguishing *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968)). Instead, the "most the Court finds plaintiff can fairly allege is that the majority arbitrators permitted their commercial business interests to influence their determination." *Id.* The Court decided that general partiality of this nature did not constitute the statutory "evident partiality" required to vacate an arbitration award:

> Of course there is a possibility, perhaps even a substantial likelihood, that any given arbitrator's views of what is good for the industry will be colored by the arbitrator's personal business experience. It may even be that, in considering the well-being of the industry generally, the arbitrator will perceive some future benefit to his or her personal business ventures that may result from the precedent established by the arbitration award. This alone, however, does not constitute the "evident partiality" section 10(b) [of the Arbitration Act] requires before an arbitration award can be disturbed.

*Id.*

The Second Circuit has also stated that an arbitrator's general interest in his or her industry is insufficient grounds for vacating an award: "As arbitrators are usually knowledgeable individuals in a given field, often they have interests and relationships that overlap with the matter they are considering as arbitrators. The mere appearance of bias that might disqualify a judge will not disqualify an arbitrator." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 173–74 (2d Cir.1984). Instead, the partiality "must be direct, definite and capable of demonstration rather than remote, un-

certain, or speculative." *Sidarama, supra,* 515 F.Supp. at 1307 (quoting *Tamari v. Bache Halsey Stuart Inc.,* 619 F.2d 1196, 1200 (7th Cir.), *cert. denied,* 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980)). In *Reichman v. Creative Real Estate Consultants, Inc.,* 476 F.Supp. 1276 (S.D.N.Y. 1979), the Court confirmed an arbitration award, holding that the " 'evident partiality or corruption' language of 9 U.S.C. § 10(b), is confined to situations where the arbitrator has had dealings or relationships with one of the parties what might cause him to be biased." *Id.* at 1284.

█ In this case, there was no evidence of any direct business or personal relationship between the arbitrators and defendants. While the small size of the award may suggest that the arbitrators were influenced by their general professional interests, the courts of this Circuit have found this "general" bias not to be the "evident partiality" required by the Arbitration Act. None of the facts before the Court evidence any direct, demonstrable bias. Consequently, the Court concludes that the arbitration award cannot be vacated on the basis of "evident partiality".

█ Though not discussed explicitly in the earlier opinions, this Court may also vacate an award if the arbitrators acted with "manifest disregard of the law", a judicially created ground for vacating an arbitration award. *Merrill Lynch, Pierce, Fenner & Smith v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986). "The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Id.* The award should not be vacated unless the arbitrators ignored "well defined, explicit, and clearly applicable" rules of law. *Id.* at 934. In the present case, the arbitrators did not give the reasons for the conclusions they reached. Though it would make the process of judicial review more meaningful, the Second Circuit has deter-

mined that arbitrators are under no obligation to state the reasons for a particular decision. *Kurt Orban Co. v. Angeles Metal Systems,* 573 F.2d 739, 740 (2d Cir. 1978).[1] Absent an indication that the award resulted from a manifest disregard for the law, the Court is not to look beyond the lump sum given. *Id.; see also Koch Oil, S.A. v. Transocean Gulf Oil Co.,* 751 F.2d 551, 554 (2d Cir.1985) (no need to disclose basis for lump sum award, and court will not inquire into rationale unless the facts of the case do not support the award). Instead, the Court is under a duty to confirm the award if it can infer a basis for the arbitrators' decision from the facts of the case. *Kurt Orban, supra,* 573 F.2d at 740 (citing *Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211, 1216 (2d Cir.1972)).

█ Both of this Court's prior decisions expressed the Court's inability to infer a ground for the arbitrator's decision from the facts of the case. The Court retreats from this conclusion in light of the above discussion. Tinaway asserted before the arbitrators that defendants violated the securities laws by making misrepresentations of material fact and by excessive trading. He claims that he would not have invested his money in stock issued by Giant Yellowknife Mines Ltd. if defendants had informed him that a strike had been ongoing at the time since April, 1980. *See* Exh. D to Tross Aff. (Plaintiff's Request for Arbitration). Tinaway had previously made a profit by selling "short" this company's stock in October, 1980. The arbitrators therefore may have concluded that the strike did not cause the subsequent drop in stock prices. Defendants also suggest that the arbitrators concluded that Tinaway could have cut his losses to the $2000 he received had he sold his stock at the time he discovered that a strike had stopped production at the mine. Tross Aff. at ¶ 12.

---

1. The Second Circuit understands the difficulty that the "no obligation to give reasons" rule engenders: "Obviously, a requirement that arbitrators explain their reasoning in every case would help to uncover egregious failures to apply the law to an arbitrated dispute. But such a rule would undermine the very purpose of arbitration, which is to provide a relatively quick, efficient and informal means of private dispute settlement." *Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211, 1214 (2d Cir.1972).

Defendants, in their answer to the arbitration request, stated to the arbitrators that Tinaway approved every transaction and was a knowledgeable investor. *See* Exh. F to Tross Aff. The arbitrators may simply have concluded that Tinaway was principally responsible for his losses and that defendants only shared very minimal and partial responsibility. Much of the determination to be made by the arbitrators turned on their reading of the facts presented to them. Since this Court is without power to second-guess the arbitrators' factual conclusions, *see Sperry International Trade, Inc. v. Gov't of Israel,* 602 F.Supp. 1440, 1443 (S.D.N.Y.1985) ("An arbitrator's conclusions involve matters of judgment, and it would be contrary to the intent of an arbitration agreement for a court to interfere; ..."); *Sidarma, supra,* 515 F.Supp. at 1308 (court may not review arbitrator's factual findings), the Court cannot conclude that the arbitrators acted in manifest disregard of the law.

 Finally, in the April 7 opinion, this Court reserved consideration on Tinaway's claims for "moral, emotional and ... punitive damages", claims which he had specifically excepted from the arbitrators' consideration. Defendants argue that these claims must be dismissed since punitive damages are not recoverable in securities fraud claims such as this one. This Court concurs. Punitive damages are not available for violations of section 10(b) of the 1934 Act. *Globus v. Law Research Service, Inc.,* 418 F.2d 1276, 1283 (2d Cir.1969) (holding that punitive damages are not available in actions brought under section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a)), *cert. denied,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); *see also In re Energy Systems Equip. Leasing Securities Litig.,* 642 F.Supp. 718, 744 (E.D.N.Y.1986) (deciding that punitive damages were not available under either the 1933 or 1934 Acts). Consequently, plaintiff's claims for punitive damages must be dismissed.

## Conclusion

Upon reconsideration in light of the Supreme Court's *McMahon* decision, this court concludes that the record does not support a determination that the arbitrators acted with either "evident partiality" or "manifest disregard for the law". Moreover, plaintiff's claim for punitive damages is dismissed. Consequently, the Court confirms the arbitration award, orders defendants to submit payment to plaintiff and dismisses this action.

SO ORDERED.