823 F.2d 553
 RICO Bus.Disp.Guide 6691
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Nadine Wohlford DRAZDIK, and Carl J. Wohlford, Plaintiffs-Appellants,
v.
KIDDER, PEABODY & CO., INC. and Laszlo B. Torzsok, Jr.,
Defendants-Appellees.
 No. 86-3336.
 United States Court of Appeals, Sixth Circuit.
 July 17, 1987.
 
 Before MARTIN, WELLFORD and MILBURN, Circuit Judges.
 WELLFORD, Circuit Judge.
 
 
 1
 The plaintiffs appeal from the district court's order compelling arbitration of their claims leased on violations of federal securities laws and Racketeer influenced and Corrupt organizations Act (RICO) laws, as well as their pendent State claim for breach of fiduciary duty. The diStrict court compelled arbitration of all claims and stayed the action. The plaintiffs timely filed a notice of appeal and also filed a motion to stay order of arbitration, which the district court denied. Thereafter, under Rule 8(a), Federal Rules of Appellate Procedure, the plaintiffs filed a motion to stay order of arbitration, which a panel of this court granted on June 6, 1986.
 
 
 2
 The plaintiffs are a widow and her son. It is alleged that they obtained $110,390.50 as insurance proceeds when mr. Wohlford (Mrs. Drazdik's former husband) died, and, on June 30, 1981, they invested that amount with defendants Kidder, Peabody & Co. (Kidder) and its account manager/account executive, Laszlo Torzsok, Jr. After Torzsok had been trading and handling the account for roughly one year, Kidder asked and Mrs. Drazdik agreed to sign a customer agreement containing an arbitration clause. After two and one-half years of dealing, the plaintiffs closed their accounts and withdrew their money. During this time, the plaintiffs allegedly questioned why Kidder was trading so heavily in their accounts, and the defendants responded that it was in their professional judgment to do so.
 
 
 3
 Alleging that the defendants "repeatedly invested, reinvested, and 'churned" ' their accounts, resulting in over 450 trades through which the defendants received at least $30,000 in commissions while the plaintiffs' investments lost at least $27,000 in value, the . plaintiffs filed a complaint against the defendants on August 26, 1985. They later amended their complaint to add a civil RICO claim. Rather than filing an answer, defendants filed a motion to dismiss and/or to compel arbitration of all claims set out in the complaint. Little discovery had taken place before the district court directed arbitration, holding:
 
 
 4
 The Court has determined that all conditions necessary to compel arbitration and stay this action under the Arbitration Act [9 U.S.C. Sec. 1 et seq.] have been demonstrated. The parties have contracted to arbitrate all disputes arising between them, and the four claims set forth in the complaint are arbitrable. Thus, this action is stayed until arbitration is completed. The Court defers ruling on the motion to dismiss until after arbitration has been completed.
 
 
 5
 We must decide, in light of Shearson/American Express, Inc. v. McMahon, --U.S. ----, --S.Ct. ----, --L.Ed.2d, 55 U.S.L.W. 4757 (1987), which of the plaintiffs' claims are required to be arbitrated as directed by the district court.
 
 
 6
 The plaintiffs' claims based on the Exchange Act of 1934 (15 U.S.C. Sec. 78j(b) and Securities Exchange Commission Rule lOb-5) and the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. Sec. 1961 et seq.) are arbitrable if they fall within the terms of a valid arbitration agreement.[1] McMahon, 55 U.S.L.W. at 4762, 4763. Similarly, the plaintiffs' pendent claims, if otherwise arbitrable, must be arbitrated in accordance with the signed Customer's Agreements. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985); see Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983); Liskey v. Oppenheimer & Co., 717 F.2d 314, 320 (6th Cir.1983).
 
 
 7
 The question, therefore, remains in this controversy: which of the plaintiffs' claims of wrongful conduct are governed by the terms of a valid agreement to arbitrate?[2] Mitsubishi Motors Co ". v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S. Ct. 3346 (1985) . The district court ordered arbitration of all of the plaintiffs' claims as to all of the plaintiffs' accounts. It made no distinction between the period before the two customer agreements[3] were signed and the period involved thereafter. We remand this decision for further consideration in light of the allegations made in this complaint.
 
 
 8
 While a plaintiff can be compelled to arbitrate her claims, arbitration is only appropriate to the extent the parties have mutually agreed to arbitrate. The plaintiffs concede that they signed two contracts containing arbitration clauses. Thus, plaintiffs' claims arising from the defendants' actions undertaken after execution of these contracts are required to be arbitrated. The Arbitration Act provides: "A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... shall be valid, irrevocable, and enforceable, .... n 9 U.S.C.A. Sec. 2 (1970) (emphasis added). There was no agreement to arbitrate plaintiffs' claims prior to June 18, 1982. We therefore question whether these arbitration agreements have application retrospectively to transactions which had already occurred. The defendants' alleged wrongful actions occurring prior to the effective date of the signing of the customer agreements may not be controversies "thereafter arising out of such contract" within the meaning of the arbitration agreement and the law governing such agreements. Further, it may be that plaintiffs were not aware of the defendants' alleged past wrongdoing at the time of signing the customer agreements containing the arbitration clauses. The district court should consider on remand whether there was an intelligent waiver of Plaintiffs' right to a judicial resolution of their claims arising from defendants' actions during the time prior to signing the defendants' forms. In case of ambiguity and uncertainty about the arbitration clauses' meaning, they should be construed against defendants. Consequently, the plaintiffs' claims based on the defendants' pre-June 18, 1982, actions in connection with account number 5OC-09358-023 and the defendants' pre-November 14, 1983, actions in connection with account number 5OC-12192-023 may or may not be required to be arbitrated, depending upon the circumstances developed after remand.
 
 
 9
 We also have considerable doubt about whether claims arising from accounts not governed by signed agreements are arbitrable in any respect. First, contrary to the terms of the customer agreements, it is not clear whether Kidder itself intended to arbitrate all disputes, instead of those specifically covered by customer agreements. Second, despite the broad language recited in the June 1982 Customer's Agreement, the defendants nonetheless requested Mrs. Drazdik to sign other customer agreements covering other accounts. There would be no purpose in this request if Kidder deemed the first agreement to cover all documents and potential controversies. Defendants offer no explanation for their conduct, which is inconsistent with the "all accounts" language in the June 18, 1982, agreement. See supra note 3. It was proper for the district court to direct arbitration of defendants' post-customer agreement conduct giving rise to the plaintiffs' claims arising in connection with account numbers 5OC-09358-013 and 5OC-12192-023. Claims alleging wrongdoing in connection with the accounts not covered by a signed customer agreement, however, require further consideration.
 
 
 10
 In accordance with McMahon and Byrd, the Plaintiffs' securities laws, civil RICO, and pendent claims must be arbitrated, but only to the extent the plaintiffs agreed to arbitrate them. In this respect, we summarize our conclusions. First, with respect to the two accounts covered by signed Customer's Agreements, the plaintiffs' claims arising from the defendants' wrongful actions occurring after execution of the respective agreements must be arbitrated. Second, the claims arising from the defendants' wrongful actions occurring prior to the effective date of the two Customer's Agreements must be arbitrated only if, on remand, the district court finds (1) that such actions constitute controversies properly covered by the agreement, and (2) that by signing the Customer's Agreements the plaintiffs intelligently waived their right to a judicial resolution of these claims. Third, the plaintiffs' claims arising from those accounts not covered by signed arbitration agreements must be arbitrated only if the district court concludes, on remand, that the parties intended the Customer's Agreements to encompass any and all of the plaintiffs' accounts. Finally, we dissolve the June 6, 1986, stay of arbitration heretofore ordered.
 
 
 11
 The decision of the district court is accordingly AFFIRMED in part, and the balance of the decision is REMANDED for further consideration in conformity with this opinion.
 
 
 
 [1]
 Relying on what we perceived to have been binding precedent, this court had consistently refused to compel arbitration of Exchange Act claims. See Sterne v. Dean Witter Reynolds, Inc., 808 F.2d 480, 483 (6th Cir.1987), and Mansbach v. Prescott, Ball & Turben, 598 F.2d 1017, 1030 (6th Cir.1979), which relied upon Wilko v. Swan, 346 U.S. 427 (1953). In light of the Court's decision in McMahon, Sterne and Mansbach are no longer authoritative statements of the law in this Circuit. Additionally, we note that McMahon has cast considerable doubt over Wilko's continuing vitality
 
 
 [2]
 Plaintiffs argue that the arbitration clause in their customer agreements with Kidder cannot be enforced on four different grounds. First, no agreements exist as to seven of their nine accounts and the Arbitration Act requires a valid contract before a claim can be compelled into arbitration. Second, the agreements to arbitrate contained in the customer agreements on the other two accounts were signed one year after the accounts were in effect, and are claimed to be unenforceable under SEC regulations. Third, the agreements are invalid due to failure of consideration. Finally, they argue that the defendants have waived the right to compel arbitration
 
 
 [3]
 The parties do not agree on how many customer agreements were signed. It appears from the brief record that Mrs. Drazdik (Wohlford) signed two "Customer's Agreements", a "Kidder, Peabody Premium Account (KPPA) Agreement", a KPPA "Securities Account Agreement", a KPPA "Visa Account Application and Agreement", and a KPPA "Client Information Form", all bearing account number SOC-09358-023. The first Customer's Agreement was signed on June 18, 1982, almost a year after Mrs. Drazdik deposited her money with Kidder, Peabody for handling and investment. Mrs. Drazdik and her son also signed a "Customer's Agreement" bearing account number 5OC-12192-023 on November 14, 1983, over two years after first opening an account. It appears that by the time the plaintiffs withdrew their money and cancelled their accounts, Kidder had for some reason established nine separate accounts in the plaintiffs' names
 The Customer's Agreements contained the following clauses:
 The undersigned agrees with respect to all accounts that he has or may have with you, whether individual, joint or as guarantor:
 ....
 Any controversy arising out of or relating to accounts of or transactions with or for the undersigned or to this agreement or the breach thereof shall be settled by arbitration in accordance with the rules of either the American Arbitration Association or the New York Stock Exchange as the undersigned may elect.